**Wallace B. GODWIN, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–654.

United States Court of Veterans Appeals.

Argued Feb. 28, 1991.

Decided Aug. 19, 1991.

As Amended Oct. 17, 1991.

Joseph A. Violante, Washington, D.C., for appellant.

David W. Engel, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

Wallace B. Godwin served in the Army in World War II from November 12, 1942, to December 29, 1945. For approximately seven months, from September 1944 to late April 1945, he was held as a prisoner of war by the German Government. This appeal is from a March 19, 1990, Board of Veterans' Appeals (BVA or Board) decision denying entitlement to service connection for residuals of an alleged left-shoulder injury and for bilateral defective hearing as well as an increased rating above 20–percent for peptic-ulcer disease. We remand the case for further proceedings at the Board with respect to the left-shoulder arthritis. As to the ulcer and hearing-loss issues, we find a failure on the part of the Department of Veterans Affairs to assist the claimant by requesting certain private and Army medical records which the veteran requested be sought and which he alleges would show information relevant to his respective claims. In the event that such records are located, the evidence should be evaluated on remand as to its sufficiency to warrant reopening of the claim on each issue and, if found so sufficient, that claim should be readjudicated in accordance with this opinion. If no such records are located with respect to the claim, the Board's decision with respect to that particular claim will stand affirmed.

## I. BACKGROUND

At the veteran's separation examination on November 28, 1945, no complaints or disabilities were noted. R. at 1. He first filed a claim with the Veterans' Administration (now the Department of Veterans Affairs) (VA) in September 1978. He alleged a hearing loss due to noise from heavy bombing during an air raid while he was a prisoner of war in Germany and that he had received treatment in service in 1945 in Aberdeen, Maryland, for that condition. R. at 15–18. A report of an October 18, 1978, VA examination indicated "bilateral sensorineural hearing loss of moderate degree." R. at 21. A VA Regional Office (RO) rating board decision denied service connection for hearing loss on December 19, 1978, stressing twice the absence of notation of hearing disability or complaints about hearing disability at the time of the veteran's separation. R. at 23.

In early 1980, the veteran sought to reopen his hearing loss claim and added a claim for an ulcer condition. In support of reopening, the veteran submitted lay state-

ments from two other ex-POWs who recalled the veteran and others being caught in an open area during an air raid after which he was bleeding from his ears and nose and that the veteran thereafter complained of ringing in his ears. Second Supp.R. at 16, 17. These statements also alleged that the veteran's ulcer problem was due to the eating of decayed food and having inadequate food while a POW. *Ibid.* The veteran also submitted 4 statements, dated December 1979, from persons alleging they had known him since his return from service in 1945, that he was experiencing hearing problems immediately upon his return, and that the problem had "steadily worsened" over the years. *Id.* at 18–21. (Although these four statements do not refer to stomach problems, the BVA in an April 1, 1983, decision on these claims referred to "[s]everal lay statements of December 1979 . . . reveal[ing] that the veteran **had problems with his stomach** and his hearing since 1945". R. at 62 (emphasis added).) The VARO rating board on January 23, 1980, denied the hearing-loss claim again as well as the ulcer claim. While stating that it did "not doubt the sincerity of the lay statements", the rating board found that "the evidence fails to establish that the veteran had any complaints of a hearing loss or stomach condition during his active military duty." R. at 28–29.

In December 1981, after the veteran had sought again to reopen his claim in October of that year, he was given a POW protocol examination, which diagnosed anxiety neurosis with depressive features, bilateral deafness, osteoarthritis of the left shoulder and both hands shown by X-ray, and stomach problems with large hiatal hernia. R. at 35. A January 28, 1982, VARO rating board decision then granted a 10–percent rating for anxiety neurosis (pursuant to Pub.L. No. 97–37, 95 Stat. 935 (1980), which had established presumptive service connection for "any of the anxiety states" in an ex-POW of 30 or more days captivity (38 U.S.C. § 312(b)(9) (1988)) and denied service connection for the other disabilities. R. at 50–51. On appeal to the BVA, the Board, in an April 1, 1983, decision denied service connection for hearing loss and stomach disorder, relying on the lack of complaints during service and for several years thereafter. R. at 59–67. The veteran's request for an increased rating for anxiety neurosis was also denied. Arthritis was not discussed, since the veteran had not expressed disagreement with the rating board decision as to arthritis.

On January 13, 1987, the veteran's representative requested to have the veteran's arthritis considered under a new law enacted on October 28, 1986, which granted a rebuttable presumption of service connection for ex-POWs with "post-traumatic osteoarthritis". Pub.L. 99–576, § 108, 100 Stat. 3248, 3252; 38 U.S.C. § 312(b)(12) (1988). A VA POW protocol exam, conducted from February 5, 1987, to August 3, 1987, recorded the veteran's complaints of hearing and stomach problems and nervousness. R. at 85. The report noted that the veteran stated he did "not have any problems with the left shoulder." R. at 84. A September 4, 1987, VARO rating board decision denied service connection for post-traumatic osteoarthritis under Pub.L. No. 99–576. R. at 102–04. (There is no indication that the veteran's left shoulder was X-rayed in connection with this examination even though in 1981 osteoarthritis of the left shoulder had been shown by X-ray. R. at 35.) A BVA appeal was initiated (an extensive statement of the case being provided on October 29, 1987, R. at 106–10) but apparently was abandoned.

On November 30, 1988, the veteran again sought to reopen the ulcer claim. R. at 111. The VARO rating board awarded him a 10–percent disability rating for "peptic ulcer disease" (R. at 118) for which a rebuttable presumption of service connection for ex-POWs had been established in Pub.L. 100–322, § 312, 102 Stat. 487, 534, enacted on May 20, 1988. *See* 38 U.S.C. § 312(b)(15) (1988). Along with his 10–percent rating for anxiety neurosis, which was continued, the veteran was given a 20–percent combined disability rating effective May 20, 1988. R. at 119. His claims for defective hearing and left-shoulder arthritis were denied again. On January 16, 1989,

the veteran filed a Notice of Disagreement on all issues. R. at 121. Another rating board decision was issued on March 7, 1989, to the same effect. R. at 122–23.

In an April 21, 1989, response to the Statement of the Case of March 9, 1989, the veteran three times requested that the VA check Army medical records in connection with his assertion that he was on sick call with regard to a complaint about hearing while stationed for a week in Aberdeen, Maryland, at the end of his service. He also seemed to request that VA examine German Government medical records used at the Nürnberg war trials. R. at 131. He had also apparently requested in March 1989 that the RO obtain his military medical records. Supp.R. at 5. Although the record reflects that VA in December 1988 did request **post**-service medical records with regard to hospitalization, R. at 132–37 and Supp.R. at 1–4, there is no indication in the record that the military records were ever requested or that the veteran's requests were ever acknowledged or responded to by VA, despite the veteran's request to "please acknowledge." R. at 131.

On May 23, 1989, the veteran was afforded a VA examination with respect to peptic ulcer disease and an impression was noted of a "small sliding type of hiatal hernia that is self-reducible" (R. at 144), with a diagnosis of "peptic ulcer disease by history." R. at 145.

Thereafter, the veteran submitted a June 7, 1989, statement from Dr. Crotwell, a private physician, who, on the basis of X-rays, diagnosed "SEVERE TRAUMATIC ARTHRITIS OF THE LEFT SHOULDER WITH A FROZEN SHOULDER." R. at 153. The veteran also submitted a June 6, 1989, letter from another private physician, Dr. Brock, who diagnosed "Severe sensory hearing loss bilaterally". R. at 155. On June 20, 1989, the rating board issued a confirmatory decision with regard to the peptic-ulcer rating (R. at 157) and on August 4, 1989, as to the left-shoulder arthritis (R. at 159). While acknowledging Dr. Crotwell's diagnosis, the rating board found that "SC [Service connection] for arthritis of the left shoulder is not established." R. at 159.

The veteran then submitted a September 1, 1989, letter from a third private physician, Dr. Butler, diagnosing "an active duodenal ulcer" warranting "an increase in compensation". R. at 169.

On September 12, 1989, the veteran and his wife testified under oath before a VARO hearing officer. R. at 170–90. The hearing officer concluded that the veteran's testimony with respect to the circumstances under which he had injured his left shoulder (falling approximately 20 feet while trying to hide in order to avoid detection by German soldiers who then took him captive, R. at 171) and with respect to the hearing loss having resulted from his hiding in a large sewer pipe during an air raid while a prisoner (R. at 176–77) was not new and material so as to warrant a reopening of those claims. Based upon the hearing testimony and Dr. Butler's statement, the hearing officer increased the veteran's rating to 20 percent for his peptic ulcer. R. at 192–93.

The BVA's March 19, 1990, decision confirmed the rating decisions of the hearing officer. As to the peptic ulcer, the BVA concluded that the severity was "no more than moderate with continuous moderate manifestations." *Wallace B. Godwin*, BVA 90–10507, at 12 (Mar. 19, 1990). In confirming the 20–percent rating, the BVA noted that the "nonservice-connected disorder [of a hiatal hernia] has contributed to some degree to the veteran's gastrointestinal symptomatology.... The evidence as a whole, in our judgment, shows that the actual manifestations of the veteran's service-connected peptic ulcer disease are well encompassed by the ... currently assigned" rating. *Id.* at 11.

As to the osteoarthritis of the left shoulder, the BVA stated that the history of left-shoulder injury "is not supported by contemporaneously recorded clinical data during service or at a time proximate thereto. The residuals of such a severe injury to the left shoulder, as was noted by history in a private physician's recent statement [referring to Dr. Crotwell apparently], would have been clinically manifested at a time much earlier than is presently documented

by the medical evidence." *Godwin*, BVA 90–10507, at 10. The BVA concluded that the "evidence as a whole does not provide an adequate basis for concluding that the left shoulder disabilities that were first clinically demonstrated in 1981 are attributable to any incident of service, including any injury that the veteran may have sustained in 1944, *or* that the veteran's arthritis of the left shoulder is of traumatic ideology." *Ibid* (emphasis added).

As to hearing loss, the BVA stated: "The evidence received since [the 1983 BVA decision] does not include any contemporaneously recorded clinical documentation of chronic defective hearing during or at a time proximate to service." *Id.* at 9. Again, the BVA concluded that "the evidence as a whole" does not support "a favorable determination in this matter." *Ibid.*

A timely appeal to this Court followed under 38 U.S.C. §§ 7252(a) and 7266 (formerly §§ 4052 and 4066). On appeal, appellant contends that the Secretary breached his 38 U.S.C. § 5107(a) (formerly § 3007) duty to assist the veteran with respect to obtaining military medical records as to the veteran's hearing-loss claim as well as documents regarding POW medical treatment submitted as evidence at the Nürnberg trials. As to the ulcer claim, the appellant contends that the BVA failed to evaluate Dr. Butler's statement as to the severity of the ulcer condition and makes the same general contention as to the post-traumatic osteoarthritis diagnosis by Dr. Crotwell. On hearing loss, the appellant relies heavily on the six lay statements previously submitted by the veteran in connection with his reopening of his claim in 1980 and cites 38 U.S.C. § 354(b) (1988) which provides that, as to a combat veteran, when satisfactory lay evidence is presented of service connection, "clear and convincing evidence to the contrary" is necessary to rebut a presumption of service incurrence.

The Secretary contends that "VA provided reasonable assistance to Mr. Godwin in the development and preparation of his claim" and gave his evidence proper and thorough consideration." Br. at 14. As to

the duty to assist, the Secretary stresses that 38 C.F.R. § 3.103(a) (1990) requires VA to assist the veteran "in developing facts and rendering a decision which grants him every benefit supported in law 'while protecting the interests of the Government.'" *Id.* at 14–15. The Secretary contends that searching for Nürnberg war trial documents and Army morning reports "would be an unproductive use of resources". *Id.* at 18. The Secretary also maintains that the BVA decision contained "adequate reasons or bases" and that the "BVA considered the record in its entirety and did not find sufficient evidence to warrant granting the benefits sought." *Id.* at 21, 22.

## II. ANALYSIS

### A. Hearing Loss

▬ In order to justify the reopening of a claim, a VA claimant must submit "new and material evidence". 38 U.S.C. § 5108 (formerly § 3008). *See Manio v. Derwinski*, 1 Vet.App. 140, 145–47 (1991); *Jones v. Derwinski*, 1 Vet.App. 210, 213–15 (1991); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). In *Colvin*, we held that "material" means "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin*, at 174. In this case, the new evidence submitted with respect to the hearing-loss issue was Dr. Brock's statement as to the severity of the veteran's contemporaneous hearing loss and the veteran's and his wife's sworn testimony with respect thereto and to the air raid incident. This evidence does not address in any respect whether or not the current hearing loss is related to the veteran's service except for the veteran's recounting of the air raid incident, which is cumulative of statements he had submitted several times previously. *See* R. at 16, 32, 85; Second Supp.R. at 16–21. This recounting was not "new", and Dr. Brock's statement and the Godwins' sworn testimony could not possibly "change the outcome", and thus are not "material". *See Colvin*, at 174. Accordingly, on the basis of the evidence sub-

mitted to justify reopening the claim, the claim for hearing loss should not have been reopened by the rating board or the BVA.

◼ In evaluating the evidence on a reopened claim, "under section [5108], . . . the BVA [must] . . . assess the new and material evidence in the context of the other evidence of record and make new factual determinations". *Jones*, at 215. In concluding that the "evidence received since the time of the prior final appellate decision [BVA in 1983] does not . . . [warrant] a favorable determination . . .", *Godwin*, BVA 90–10507, at 9, the BVA applied the wrong standard in evaluating the hearing loss evidence. However, this is not prejudicial error under 38 U.S.C. § 7161(b) (formerly § 4061) because the claim should not have been reopened. *See Thompson v. Derwinski*, 1 Vet.App. 251, 253–54 (1991) (BVA erred in reopening claim based on submission of allegedly "new and material" evidence which was, as a matter of law, essentially cumulative).

◼ Further as to the hearing-loss issue, we find that the Department failed in its obligation to assist the veteran in the development of the claim under 38 U.S.C. § 5107(a) with respect to the veteran's repeated requests for a search of Army medical records, particularly those at Aberdeen, Maryland. Under 38 U.S.C. § 354(b) (1988), the veteran's testimony and the six lay statements were sufficient to establish a well-grounded claim, thereby invoking the Secretary's duty "to assist a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a). *See Moore v. Derwinski*, 1 Vet.App. 401, 405 (1991); *Murphy v. Derwinski*, 1 Vet.App. 78, 80–81 (1990). Hence, as to this issue the case must be remanded. If no such records are located after reasonable attempts to secure them, that ends the matter as to this issue since the claim should not have been reopened. If such records are secured, then the BVA must make a determination as to whether or not the evidence in them is new and material so as to justify reopening under *Colvin* on the hearing-loss claim, and, if it is, the BVA must then proceed to readjudicate that issue as a reopened claim in accordance with this opinion.

◼ As to the appellant's apparent request that VA search the Nürnberg trial medical evidence, the appellant was and still is entitled to a response from VA as to whether he has made a sufficient showing of the relevance of such records to his claim. The duty to assist is not unlimited. As quoted above, 38 U.S.C. § 5107 provides that the Secretary shall assist the claimant in developing facts **pertinent** to the claim. *See also* 38 C.F.R. § 3.103(a) (1990). In *Murphy*, 81, we stated that the duty to develop pertinent facts applies to "all **relevant** facts." (boldface emphasis added). In *Murphy*, at 81, the Court held that a conclusion by the BVA that "there was no duty to provide assistance to the claimant . . ., like all other findings and conclusions of the BVA, must be supported by a 'written statement of . . . the reasons or bases for those findings and conclusions.' 38 U.S.C. § [7104](d)(1) (1988); *see also Gilbert v. Derwinski*, U.S. Vet.App. No. 89–53 [1 Vet.App. 49] (Oct. 12, 1990)." Inherent in the duty-to-assist obligation and the *Gilbert* explanation mandate is a requirement for the Secretary to respond to a claimant's request for VA assistance one way or the other. If VA turns the request down because it finds that the requested information is not relevant or that the claim is not well grounded (a prerequisite to the triggering of the duty-to-assist obligation under section 5107(a), *see Murphy*, at 80–81), then the claimant will have the opportunity to try to convince VA that the information he seeks is relevant or that the claim is well grounded, or to submit other evidence as an alternative. In this case, the appellant received no response whatsoever except for the assertions in the Secretary's brief that searching through the Nürnberg records "would be an unproductive use of [Government] resources." Br. at 14. On remand, the appellant's request must be dealt with by VA directly.

Since this case is being remanded on the duty-to-assist issue as to the hearing-loss claim and, as discussed in part C, below, as

to the ulcer claim and for readjudication on the arthritis claim, as discussed in part B, below, the Board, in light of 38 C.F.R. §§ 19.185(a), 19.187(a) (1990) (reconsideration upon obvious error of fact or law), may wish to take into account the following on remand. Section 354(b) of title 38, U.S.Code, requires that as to a combat veteran "satisfactory lay or other evidence of service incurrence ... of ... injury or disease, if consistent with the circumstances, conditions, or hardships of [the veteran's] service," shall be accepted as sufficient proof of service connection, "notwithstanding that there is no official record of such incurrence in such service...." 38 U.S.C. § 354(b) (1988); *see also* 38 C.F.R. §§ 3.304(d) and 3.102 (last sentence) (1990). Neither the rating board decisions nor the 1983 and 1990 BVA decisions referred to this statutory requirement, let alone applied it. In *Moore v. Derwinski*, 1 Vet. App. 401, 405 (1991), we held that where through no fault of a combat veteran (there due to the St. Louis Federal Record Center fire) service medical records are not available, "a combat veteran's statement ["that he had problems with his feet at the time of his separation examination"] ... is sufficient evidence" under 38 U.S.C. § 354(b) of an event asserted to have occurred in service with respect to which there would normally be a service record. In *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991), we held that "where service medical records are presumed destroyed ..., the BVA's obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule [under 38 U.S.C. § 5107(b)] is heightened." Here, through no fault of the veteran ex-POW, there are presently no medical records available from his captivity. The same principles that were applied in *Moore* and *O'Hare* (in *O'Hare*, the veteran had served less than 4 months, all stateside) are, to say the least, applicable to the assessment of the sworn testimony of an ex-POW.

Under 38 U.S.C. 7104(d)(1) (formerly § 4004) and our precedents beginning with *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990), the claimant is entitled to "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions". *See, e.g., Moore*, at 405 (citing cases). The reasons or bases must include "an analysis of the credibility or probative value of the evidence submitted by and on behalf of the [claimant] in support of [his or her] claim [and] a statement of the reasons or bases for the implicit rejection of this evidence by the Board." *Gilbert*, at 58; *see also Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991); *O'Hare*, at 367 (citing cases).

The appellant here has never been provided with a satisfactory explanation by the RO or BVA as to why his and his wife's sworn testimony and the six lay statements are not "sufficient evidence" of service connection of his hearing problem, especially why, under the "benefit of the doubt" rule in 38 U.S.C. § 5107(b) and the "reasonable doubt" rule in 38 U.S.C. § 354(b) for a combat veteran, the evidence was not at least in relative equipoise, in which case "the law dictates that [the claimant] prevails". *Gilbert*, at 54. Against this background, the Board may wish to consider a *de novo* readjudication of the hearing-loss issue when it carries out the readjudication required on remand by this opinion.

### B. Osteoarthritis

With respect to the left-shoulder arthritis issue, we conclude, first, that Dr. Crotwell's diagnosis of "severe traumatic arthritis" after X-ray was new and material evidence sufficient to reopen that claim. The BVA seemed to reject Dr. Crotwell's statement on the ground that the diagnosis of "traumatic" had not been made in the early 1980s when arthritis was first diagnosed in the veteran's left shoulder. The Board stated: "The residuals of such a severe injury to the left shoulder ... would have been clinically manifested at a time much earlier than is presently documented by the medical evidence." *Godwin*, BVA 90–10507 at 10. This is an example of what the Court found was impermissible refutation by the Board of "the expert medical conclusions in the record with [the BVA's] own unsubstantiated medical con-

clusions." *Colvin*, at 175. Given the clear and unambiguous diagnosis by Dr. Crotwell, we hold that the Board's basis for rejection of his opinion is not adequate under the requirements of 38 U.S.C. § 7104(d)(1), *Gilbert* and its progeny, and *Colvin* without a contemporaneous examination and X-ray by the Department. *See also Murphy v. Derwinski*, U.S. Vet.App. No. 89–108, slip op. at 4 (Jan. 18, 1991); *Witherspoon v. Derwinski*, U.S.Vet.App. No. 89–143, slip op. at 1–2, —— Vet.App. —— (per curiam order, Mar. 8, 1991); *Moore*, at 405.

■ Furthermore, the Board's analysis designed to show that the arthritic condition is not "attributable to any incident of service", *Godwin*, BVA 90–10507, at 10, is irrelevant under the presumption established by 38 U.S.C. § 312(b)(12) (1988) that "in the case of a veteran who is a former [POW] and who was detained or interned for not less than thirty days" any condition of "post-traumatic osteoarthritis ... which became manifest to a degree of 10 percent or more after active military ... service shall be considered to have been incurred in ... service, notwithstanding that there is no record of such disease during the period of service." Once a traumatic etiology is established for such an arthritic condition, the presumption could be rebutted only by "affirmative evidence to the contrary, or evidence to establish that an intercurrent injury or disease which is a recognized cause of [the arthritis] ... has been suffered between the date of separation from service and the onset of [the arthritis], or [that] the disability is due to the veteran's own willful misconduct". 38 U.S.C. § 313 (1988). The BVA decision contains no such analysis.

Hence, this issue must be remanded to the BVA for readjudication and, if the Board does not accept Dr. Crotwell's diagnosis of post-traumatic osteoarthritis of the left shoulder, for the conduct of an examination of the veteran dealing specifically with that issue.

### C. Ulcer

■ Although the BVA's discussion of the ulcer issue does not appear to take into direct account Dr. Butler's September 1989 letter, we find that to be harmless error. We so hold because the rating schedule with respect to a gastric ulcer requires that for a rating above 20 percent—the next higher rating is 40 percent—both "impairment of health manifested by anemia and weight loss or recurrent incapacitating episodes averaging ten days or more in duration at least four or more times a year" must exist. 38 C.F.R. § 4.114, Diagnostic Code 7304 (1990). Although it is certainly plausible to evaluate the new and old evidence with respect to the gastric ulcer as demonstrating a "moderately severe" condition "with less than severe symptoms", the other requirements (as to anemia and weight loss or incapacitating episodes) are not supported in the record to any extent. Hence, the BVA's failure to provide an explicit evaluation of Dr. Butler's letter was not a prejudicial error under 38 U.S.C. § 7261(c).

■ There is, however, also a duty-to-assist issue as to the appellant's ulcer claim. The appellant, twice in presenting his request for reopening in November 1988, once in his January 18, 1989, Notice of Disagreement (NOD), and again twice in his March 21, 1989, response to VA's Statement of the Case, requested VA to obtain medical records of the treatment of his ulcer from the Columbia General Hospital in Andalusia, Arkansas. R. at 116, 121, 131. VA failed to respond to this request, as it should have. Because the appellant contended in his January 1989 NOD that his stomach condition was "much more severe than the VA has indicated" (R. at 121), he has adequately asserted how these records would be relevant to the question of the current severity of his ulcer disease for rating purposes. We, therefore, find that VA failed in its section 5107(a) duty-to-assist obligation with respect to this request as well. The matter is remanded for VA to attempt to obtain such records and, if it obtains any such records, for a determination as to whether or not the evidence in them is new and material so as to justify reopening under *Colvin* on the ulcer claim, and, if it is, for readjudication of that issue as a reopened claim in accordance with this

opinion. If no such records are located after reasonable attempts to secure them, that ends the matter and the Board's decision on this issue will stand affirmed.

### III. CONCLUSION

Accordingly, as to the March 19, 1990, BVA decision, we retain jurisdiction and (1) on the issues of peptic ulcer disease and of hearing loss, the decision and the record is remanded to the Board for the Secretary to comply, in accordance with this opinion, with the duty to assist and, if new and material evidence is found to have been produced thereby, for readjudication in accordance with this opinion; and (2) on the issue of the left-shoulder osteoarthritis, the matter is remanded for readjudication in accordance with this opinion. The Secretary shall file with the Clerk and serve upon the appellant a copy of the Board's decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

REMANDED.