Paul R. WALLACE, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–1518.

United States Court of Veterans Appeals.

Submitted April 8, 1991.

Decided Jan. 22, 1992.

Paul R. Wallace, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Angela Foehl, Washington, D.C., were on the pleadings, for appellee.

Before IVERS, Associate Judge.

## MEMORANDUM DECISION

IVERS, Associate Judge:

Appellant, Paul R. Wallace, seeks review of an October 17, 1990, decision of the Board of Veterans' Appeals (BVA or Board). In that decision, the BVA denied service connection for disorders of appellant's left and right knees. His claim for service connection for the left knee disorder was denied by a Veterans' Administration (now the Department of Veterans Affairs) (VA) Regional Office rating decision on June 17, 1946. R. at 16. On April 2, 1970, Mr. Wallace requested that his claim for the knee condition be reopened. R. at 18. His request is followed in the record by medical reports from the early 1970's which show that, in addition to the left knee disorder, an injury to the right knee occurred when the veteran was working for the railroad in 1951, several years after his discharge from service. R. at 19, 21–22, 25, 38, 40. Although these medical reports presumably were submitted in order to reopen the claim for the left knee disorder and perhaps to make a new claim for service connection for the right knee disability, there is no evidence in the record of a rating decision having been issued in the 1970's. R. at 19–43. Therefore, it is not clear from the record whether the claim was actually reopened in the 1970's. On November 2, 1988, Mr. Wallace filed a statement requesting that the Regional Office reopen his claim for service connection

for disabilities in *both* knees. R. at 43. On November 18, 1988, the Regional Office "confirmed and continued n[on] s[ervice] c[onnection]" for the disabilities ofboth knees. R. at 44–45. A hearing was held at the Regional Office on March 26, 1990. R. at 56. On April 30, 1990, a hearing officer denied service connection for right and left knee injuries. R. at 80–82. On August 9, 1990, an informal hearing was held for subsequent presentation to the BVA. R. at 85. On October 17, 1990, the BVA denied service connection for the knee disorders. Because it cannot be determined from the BVA decision or from the record on appeal that appellant's claim was properly reopened or, if it was properly reopened, whether all of the evidence, including the testimony ofthe veteran, was considered by the BVA in rendering its decision, this case is remanded to the Board for action consistent with this opinion.

## I. BACKGROUND

The veteran served on active duty from February 1944 to May 1946. R. at 16. His service entry examination was negative for any abnormality of the knees. R. at 2. However, his service medical records show that Mr. Wallace complained of a sore left knee in January 1945, and that he stated that he had injured the knee while playing football two years before entering the service. He further stated that he had had trouble with his left knee since that time. R. at 4–6. In January 1945, Mr. Wallace was hospitalized and underwent surgery in which the entire cartilage of the left knee was removed. R. at 6. His service medical records reveal that, in May 1945, after a period of convalescence, Mr. Wallace had ½ inch atrophy of the left quadriceps muscles but that strength and tone were good and range of motion was complete. Approximately a week later, he was discharged from medical care as fit for duty and assigned to the U.S.S. Intrepid. R. at 9. Mr. Wallace's service medical records show no in-service injury to either knee, before or after the January 1945 surgery. The separation examination conducted in May 1946 was negative for any knee disorder. R. at 10–12.

The medical reports of record that apparently were submitted subsequent to Mr. Wallace's 1970 request to reopen his claim for "a condition of the knee" include reports from examinations conducted in 1970 and 1971 by both VA and private physicians and hospital reports of treatment in 1971 at the University of Missouri–Columbia Medical Center. R. at 19–43. Contrary to the statements of the veteran, recorded in his service medical records of 1945, regarding a football injury to his left knee incurred prior to service, the reports from the 1970's record the veteran's apparently new contention at that time that he sustained an injury to his left knee during an explosion aboard the U.S.S. Intrepid during an alleged kamikaze attack on that vessel. R. at 18–19, 21, 38, 40, 43. In denying service connection for disabilities of both knees in the November 18, 1988, rating decision, the rating board noted that "[i]t is now contended that both knees were injured aboard ship during a battle at sea. However, *this contention is not new* and no new factual basis has been presented to justify a change in previous disallowances." R. at 44–45 (emphasis added).

## II. ANALYSIS

In its decision, the BVA notes that the decision of the originating agency in 1946 denying service connection for a left knee disorder is final but that the law permits the veteran to submit additional evidence which, if new and material, would permit reopening of the claim. BVA decision at 6. However, in its discussion and evaluation of this appeal, the Board does not identify the evidence submitted, nor does it make clear whether or not the evidence submitted by Mr. Wallace in 1988 was sufficient to reopen the claim rendered final by the 1946 rating decision and possibly confirmed by a rating decision in the early 1970's. In order to reopen a claim, a claimant must submit "new and material evidence". 38 U.S.C. § 5108. *See Manio v. Derwinski,* 1 Vet.App. 140, 145–47 (1991); *Jones v. Derwinski,* 1 Vet.App. 210, 213–15 (1991); *Colvin v. Derwinski,* 1 Vet. App. 171, 174 (1991). If the BVA deter-

mines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old. *Manio* 1 Vet. App. at 145. "New" evidence is not that which is merely cumulative of other evidence on the record, and "material" evidence gives rise to "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both old and new, would change the outcome." *Colvin* 1 Vet.App. at 174.

From the record on appeal, it is clear that the evidence submitted did not address, in any respect, whether or not the veteran's then current problems with his knees were related to his service, except for the veteran's own statements about being injured as a result of a kamikaze attack in 1945. The Board did not address these statements in its decision. R. at 19–38. Because there is no evidence in the record of a rating decision having been issued in the early 1970's, it is unclear whether Mr. Wallace submitted new and material evidence sufficient to reopen his claim at that time or whether his claim was reopened. If it was reopened, there is nothing in the record to show how the rating board chose to deal with Mr. Wallace's apparently new contentions about having sustained an injury to his left knee during a kamikaze attack. If the rating board considered these statements in the 1970's and rendered a decision regarding them, then Mr. Wallace's contention in 1988 of injury during a kamikaze attack was cumulative of statements submitted previously, and it therefore would not have been "new" and not sufficient to justify reopening the claim. *Godwin v. Derwinski*, 1 Vet.App. 419, 424–25 (1991). However, it is not clear from the record when the contention was first made or if and why it was deemed to be without merit.

In a hearing held at the Regional Office on March 26, 1990, Mr. Wallace again claimed, this time under oath, that his knees were injured in a kamikaze attack during World War II. R. at 57–58. The law provides under 38 U.S.C. § 1154(b) that "[i]n the case of any veteran who engaged in combat with the enemy ... during a period of war, ... the Secretary shall accept as sufficient proof of service-connection of any ... injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury ... if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service ..." Section 1154(b) also provides that "[s]ervice-connection of such injury ... may be rebutted by clear and convincing evidence to the contrary." The record before us suggests that appellant was assigned to the U.S.S. Intrepid after corrective surgery on his left knee was performed. R. at 9. Moreover, the record reflects no subsequent treatment having been provided for the appellant's knees after his release from the hospital in May 1945. The separation exam reveals no defect of either knee. R. at 10–12. Furthermore, the record indicates that Mr. Wallace's right knee was injured in an accident in the 1950's, well after the veteran had been discharged from the service. R. at 19, 25, 38, 44. Finally, although the record shows that Mr. Wallace may have served aboard the U.S.S. Intrepid, there is no evidence in the record, other than the veteran's testimony, of a kamikaze attack on that vessel. R. at 4, 9.

Given that the record shows Mr. Wallace making the contention about the kamikaze attack as early as 1970, it would appear that by 1988 this contention was not new and therefore not sufficient to justify reopening the claim. However, the record before us is not sufficient for this Court to determine exactly when Mr. Wallace's contention was first made and whether it was considered at that time in light of 38 U.S.C. § 1154(b). Accordingly, the appellee's motion for summary affirmance is DENIED and the October 17, 1990, BVA decision is vacated and the matter is REMANDED to the Board to determine whether this claim was properly reopened, and, if so, to consider the testimonial evidence of Mr. Wallace and the entire evidence of record in

light of the requirements of 38 U.S.C. § 1154(b).