Pauline A. HILL, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–868.

United States Court of Veterans Appeals.

July 2, 1992.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

Pauline A. Hill, proceeding *pro se,* appeals a Board of Veterans' Appeals (BVA or Board) decision, dated July 23, 1990, which denied an award of Dependency and Indemnity Compensation (DIC) on the basis that the evidence of record did not establish service connection for her veteran husband's cause of death. Summary disposition is appropriate in this case because it is one "of relative simplicity" and the outcome is controlled by our precedents and is "not reasonably debatable". *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance, which the Court will deny for the reasons set forth below. Because of deficiencies in the BVA decision, the record will be remanded with instructions.

### I.

The veteran, Horace H. Hill, served on active duty in the U.S. Army from October 1939 to July 1945. R. at 72, 83, 88. Various undated service medical records reflected notations of a normal cardiovascular system. R. at 16, 32, 52. An Army hospital entry, dated September 4, 1944, stated that the veteran had experienced "pains in left chest anteriorly—about 1 year—related to heavy lifting". R. at 67. It further noted "Tachycardia—admits hav-

ing nervous spells". *Ibid.* The veteran was hospitalized on September 28, 1944, for observation of the tachycardia and was returned to duty on October 5, 1944 upon a final diagnosis of "no disease[;] ... found physically fit." R. at 64, 71. The veteran's separation physical examination was similarly unremarkable with regard to cardiovascular disease. R. at 73. The report noted a "normal" cardiovascular system and "no significant abnormalities" in the chest x-ray.

Pursuant to a Veterans' Administration (now Department of Veterans Affairs) (VA) medical examination in November 1946, the veteran received a chest x-ray once again, which resulted in a "normal" finding. R. at 75. Upon examination of the cardiovascular system, however, the physician noted: "[the veteran] has marked tachycardia—apparently very nervous—gets short of breath after exercise." R. at 78. The only apparent diagnosis with regard to the complete examination was "anxiety". R. at 82, 86.

In December 1947, the veteran was examined at a VA facility, where he reported that he was disabled by a "nervous condition". R. at 88. Examination of his cardiovascular system was again unremarkable except for a fast heart beat. R. at 89. The relevant diagnosis was "anxiety reaction, chronic, moderate, manifested by tension, apprehension, profuse perspiration, gastric distress, and headaches". R. at 92. The veteran was subsequently awarded service connection by the VA Regional Office (RO) for anxiety reaction, effective May 3, 1948, and was assigned a 10% disability rating.

In April 1977, the veteran received a diagnosis of moderate hypertension secondary to anxiety, the first such diagnosis apparent in the record on appeal. R. at 100. During the physical examination, the veteran denied "any symptoms of chest pain, shortness of breath, dizziness, or blackouts". His electrocardiogram was within normal limits, and his "cardiac examination" was "normal". The report stated that "no heart disease was found." R. at 108. In a rating decision dated May 23, 1977, the RO increased the veteran's dis-

ability rating for service-connected anxiety reaction to 30%. R. at 109. In the same decision, the rating board denied service connection for hypertension. The veteran did not appeal that denial.

He died on March 19, 1989, from cardiac arrest due to hypertensive coronary artery disease. R. at 112. Noted on the veteran's death certificate as the immediate cause of death was "CARDIAC ARREST ... DUE TO HYPERTENSIVE CORONARY ARTERY DISEASE". On March 31, 1989, the appellant applied to VA for DIC, claiming service connection for her veteran husband's cause of death. R. at 114. The claim was denied in an April 28, 1989, rating decision. R. at 118. In August of the same year, the RO received a statement by a private physician who, upon the appellant's request, had reviewed the veteran's medical records from 1977 forward. The physician, Dr. Karody, stated in pertinent part:

"I feel based on the information from the charts that this patient['s] **multiple risk factors** including Diabetes, Hypertension, off and on smoking **may have contributed** to his death[.] In addition this patient was on a Service Related Disability for Anxiety Reaction.... I believe that the patient's chronic anxiety **may have contributed** to the Hypertensive Coronary Artery Disease, which was the ultimate cause of death."

R. at 126 (emphasis added). The RO continued its previous rating on the basis of this evidence. In the appellant's December 28, 1989, substantive appeal to the BVA, she listed a number of VA medical facilities where she believed her husband had received medical treatment pertinent to her claim. Medical records from two of those facilities—in Idaho and California—are absent from the record on appeal.

## II.

Under 38 U.S.C. § 1310 (formerly § 410), DIC will be paid to a deceased veteran's spouse when the veteran has died from a disability incurred in or aggravated by active military service, that is, from a service-connected disability. Under 38 C.F.R. § 3.312 (1991), the service-connected dis-

ability will be considered the cause of death when (1) it is singly or jointly the immediate cause, (2) it contributed substantially or materially—combined with another condition—to the cause, (3) it involved active processes affecting vital organs and rendered the veteran materially less capable of resisting the effects of other disease or injury, or (4) it was of such severity as to have had a material influence in accelerating death. In its July 23, 1990, decision, the BVA concluded, inter alia, that the veteran's service-connected anxiety reaction did not cause his death, did not contribute materially or substantially to his death, did not render him materially less capable of resisting the fatal heart disease, and did not accelerate his death. *Pauline A. Hill,* BVA 90- ——, at 6 (July 23, 1990).

▪▪▪ The Court reviews BVA factfinding under a "clearly erroneous" standard. Under 38 U.S.C. § 7261(a)(4) (formerly § 4061) and *Gilbert v. Derwinski,* 1 Vet. App. 49, 52–53 (1990), the Court must set aside a finding of material fact as clearly erroneous when the Court is left with a definite and firm conviction, after reviewing the entire evidence, that a mistake has been committed by the Board to the extent that no "'plausible basis' in the record" exists for the BVA findings at issue. Here, however, the Court cannot proceed to review the merits of the Board's decision to determine whether a plausible basis exists in the record to support the Board's findings of fact since the Court has been presented with an inadequate BVA decision and record for review. *Id.* at 56–57 (basis for administrative decision must be clear enough to permit effective judicial review; bare conclusory statement without supporting analysis and explanation does not suffice).

▪▪▪ The BVA's decision contains legal shortcomings foreshadowed in the Court's March 19, 1992, order in this case. Under 38 U.S.C. § 5107(a) (formerly § 3007), the Secretary has a duty to assist a claimant who has presented a well-grounded claim in the development of facts pertinent to the claim. A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation". *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Where a well-grounded claim has been submitted, the statutory duty to assist requires VA to obtain medical records the existence of which has been called to its attention. *See Murincsak v. Derwinski,* 2 Vet.App. 363, 372 (1992); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991); *Littke v. Derwinski,* 1 Vet.App. 90, 92–93 (1990). The Court concludes that the appellant submitted a well-grounded claim so as to impose on the BVA the duty to seek to obtain the Idaho and California VA medical records of which it was apprised in the appellant's substantive appeal to the Board. In support of her claim, the appellant had presented evidence that (1) the veteran's service-connected anxiety reaction "may have contributed to the Hypertensive Cornary [sic] Artery Disease", the immediate cause of death (R. 126), and (2) his hypertension developed "secondary" to his anxiety (R. 100)—evidence capable of substantiation—in order to show that the veteran's service-connected anxiety contributed to the cause of death in a way recognized under 38 C.F.R. § 3.312.

▪▪▪ In its March 19 order, the Court ordered the Secretary to inform the Court whether VA had previously solicited these records. On May 14, 1992, the Secretary responded to the Court's order. Included in the response was a July 23, 1979, letter from the veteran to VA requesting that medical records from the Long Beach, California, VA Medical Center (VAMC) be acquired. Those records, appended to the Secretary's response, were apparently obtained at that time by VA but were not included in the record on appeal. Dating from 1978 through part of 1979, these records show consistent diagnoses of hypertension. Although the veteran seems to have remained in Southern California until his death, no California medical records after 1979 appear in the record. The Secretary's response to the Court order also demonstrates that no medical records from Idaho were either sought or acquired by the Secretary.

**574**

The Secretary's response to the Court order is inadequate to convince the Court that the Board properly carried out the duty to assist by seeking to obtain all of the requested records. A communication between the veteran and VA which prompted its solicitation of Long Beach VAMC records in 1979 does not suffice to show that any efforts were undertaken when the appellant submitted her substantive appeal. Despite the appellant's failure to mention treatment dates with respect to the California and Idaho VA records, the BVA had sufficient information from the appellant to request from her the dates if, indeed, such information was needed in order to obtain the requested records and fulfill the duty to assist. *See Murphy v. Derwinski*, 1 Vet.App. at 82. In light of the gaps of treatment in the record, especially the gap between 1979 and 1989 when the veteran died, the missing records may have been critical to the development of the appellant's claim. Because the Board did not mention in its decision whether any efforts had been undertaken to obtain any of the records in question and because the Secretary's response to the Court's March 19 order does not indicate the undertaking of any such efforts, a remand is necessary to enable the Board to fulfill its statutory duty to assist the claimant pursuant to 38 U.S.C. § 5107(a). *See Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991) (Secretary must respond "one way or the other" to claimant's request for assistance). Upon remand, the Board must seek to obtain all VA medical records from Long Beach or Riverside, California (where the veteran died), and Idaho, which are pertinent to the appellant's claim, requesting from her any information necessary for fulfillment of the duty to assist.

If, upon remand, the Board attempts to acquire those records to no avail or acquires them but concludes that they are not relevant to the claim, it must so indicate among the reasons or bases for its decision that are required under 38 U.S.C. § 7104(d)(1) (formerly § 4004). *See Godwin, supra; Murphy*, 1 Vet.App. at 81. Furthermore, upon remand, the Board must correct an error that it had committed in articulating the reasons or bases for its July 1990 decision—its conclusion that "[a]nxiety does not cause cardiovascular disease". *Hill*, BVA 90-—, at 5. "BVA panels may consider only independent medical evidence to support their findings"; they may not draw conclusions based on their own unsubstantiated medical opinions. *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). If the medical evidence of record is insufficient, or, in the Board's opinion, is of doubtful weight or credibility, then the Board is free to supplement the record with an advisory medical opinion or with quotations from recognized medical treatises. *Ibid.; see* 38 U.S.C. § 7109(a) (formerly § 4009).

### III.

In view of the foregoing and upon consideration of the record, the appellant's brief, and the Secretary's motion, it is held that the Secretary's motion for summary affirmance is denied, and the July 23, 1990, BVA decision is vacated and the record remanded for proceedings consistent with this decision. Upon remand, the Board shall promptly conduct "a critical examination of the justification for the [July 23, 1990,] decision", reexamine the evidence before it, seek the evidence that its duty to assist requires, and incorporate into the record and consider any additional evidence which the appellant chooses to submit. *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Court retains jurisdiction. The Secretary shall file with the Clerk and serve upon the appellant a copy of any Board final decision on remand. Within 14 days after any such filing, the appellant shall notify the Clerk whether she desires to seek further review by the Court.

VACATED AND REMANDED.