# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-1156

SETH D. BRAMBLEY, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided     February 27, 2003  )

*Richard A. LaPointe,* of Marco Island, Florida, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *Joan E. Moriarty*, Acting Assistant General Counsel; *Mary Ann Flynn*, Deputy Assistant General Counsel; and *Robert W. Legg*, all of Washington, D.C., were on the brief for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges*.

IVERS, *Judge*, filed the opinion of the Court. STEINBERG, *Judge*, filed a concurring opinion.

IVERS, *Judge*:  Veteran Seth Brambley appeals a May 30, 2001, decision of the Board of Veterans' Appeals (Board or BVA) that (1) denied an increased disability rating for low back strain with degenerative arthritis of the lumbar spine with limitation of motion, currently rated as 40% disabling; (2) denied an increased rating for degenerative arthritis of the thoracic spine with pain on motion, currently rated as 10% disabling; and (3) remanded a claim for a rating of total disability based on individual unemployability (TDIU).  Record (R.) at 1-23.  The Court will not address the merits of the remanded TDIU-rating claim because no final Board decision has been entered with respect to that claim, and it is not, therefore, properly before the Court.  *See* 38 U.S.C. § 7252(a); *Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000); *see also* 38 C.F.R. § 20.1100(b) (2002).  For the reasons discussed below, the Court will vacate the Board decision and remand the matter for

further proceedings consistent with this opinion.

# I. FACTS

The appellant served on active duty with the U.S. Marine Corp. from June 1985 to March 1987. R. at 102. In September 1997, he filed a claim seeking increased disability ratings for his service-connected back conditions and a claim seeking a TDIU rating. R. at 231-35. At that time, the veteran had a 20% disability rating for chronic low back strain with degenerative arthritis of the lumbosacral spine with limitation of motion, and a 10% disability rating for degenerative arthritis of the thoracic spine with pain on motion. R. at 145-47, 171-73. A VA regional office (RO) conducted a spine examination in August 1999. R. at 316-20. X-rays showed, inter alia, mild degenerative arthritic changes in the thoracic area, deformity of the anterosuperior corner of the L4 vertebra, and degenerative changes in the lumbar region. R. at 319. A VA compensation and pension (C&P) social work examination was conducted in September 1999 to review the appellant's work history and assess his employability. R. at 310-14. A November 1999 RO decision continued the 10% rating for his arthritis of the thoracic spine and awarded a rating increase to 40% for degenerative arthritis of the lumbar spine with limitation of motion. R. at 322-29. The same RO decision denied the TDIU-rating claim on the ground that the appellant's condition did not meet the regulatory threshold described in 38 C.F.R. § 4.16(a) (2002) for that rating. R. at 327.

In the decision here on appeal, the Board reviewed the history of the appellant's claims concerning his back disabilities. R. at 3-9. The Board summarized the relevant regulatory diagnostic codes and analyzed the appellant's service-connected disabilities in light of the applicable codes. R. at 9-12. The Board concluded that the appellant was receiving the maximum schedular ratings allowed for his conditions. R. at 15-17. The Board also considered the applicability of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) (2002). The Board concluded that the appellant had not demonstrated that either of his back conditions, in and of itself, was sufficiently extraordinary or unusual to warrant referral to the VA C&P Service Director for consideration of an extraschedular rating. R. at 15-17.

With respect to the appellant's TDIU-rating claim, the Board concluded that additional

2

evidentiary development was necessary. R. at 18. In a seven-point remand order, the RO was directed to clarify inconsistencies in the appellant's employment history, particularly the effect of his service-connected disabilities on his employability. R. at 19-22. The RO was directed to provide for an orthopedic examination, if necessary, to determine whether the appellant was capable of performing sedentary or nonstrenuous employment. R. at 21.

## II. ANALYSIS

The Board's findings as to the degree of impairment resulting from a disability are factual and are reviewed by the Court under the "clearly erroneous" standard under 38 U.S.C. § 7261(a)(4). *See Francisco v. Brown*, 7 Vet.App. 55, 57 (1994); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). The Board must base its decision on "all evidence and material of record" and must provide a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(a), (d)(1); *see Gilbert*, 1 Vet.App. at 56-57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert*, 1 Vet.App. at 57. The Board's statement must be adequate to inform the appellant of the basis for the discussion and to permit effective judicial review. *See Fleshman v. Brown*, 9 Vet.App. 548, 552-53 (1996); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995).

The appellant contends, inter alia, that the Board failed to provide an adequate statement of reasons or bases as to the issue of entitlement to an extraschedular rating under 38 C.F.R. § 3.321(b)(1). Appellant's Brief (Br.) at 5. The Secretary counters that the Board reviewed the entire record and found that the evidence did not show that either the appellant's low back disability or thoracic spine arthritis presented a disability picture unusual enough to render the application of the rating schedule impractical. Secretary's Br. at 15.

Section 3.321(b)(1), which provides an avenue for additional review of the exceptional case, states:

[W]here the schedular evaluations are found to be inadequate, the Under Secretary

3

for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

38 C.F.R. § 3.321(b)(1) (2002). Extraschedular rating consideration is a component of the appellant's claim for an increased rating. *See Bagwell v. Brown*, 9 Vet.App. 337, 339 (1996); *Floyd v. Brown*, 9 Vet.App. 88, 96 (1996) (stating that extraschedular rating consideration is "always part" of claim for schedular rating-increase claim). As the Court previously has held, the Board is obligated to consider the applicability of extraschedular ratings to a claimant's increased-rating case. *Floyd, supra.* In circumstances where the Board does not refer a claim for extraschedular review, "the Board must provide an adequate statement of reasons or bases for its decision not to do so." *Colayong v. West*, 12 Vet.App. 524, 537 (1999); *see also Bagwell,* 9 Vet.App. at 339; *Kellar v. Brown*, 6 Vet.App. 157, 161 (1994) (remanding for Board's failure to provide adequate statement of reasons or bases regarding applicability of 38 C.F.R. § 3.321(b)(1)).

In the decision on appeal, the Board concluded that the evidence of record did not support referral of the appellant's back disabilities for extraschedular consideration. Then, in remanding his TDIU-rating claim, the Board acknowledged that "additional development" was necessary and ordered the RO to investigate several specific inconsistencies in the record. R. at 18. Among other tasks, the RO was ordered to

2. [O]tain the veteran's Chapter 31 vocational rehabilitation folder and associate it with the claims folder.

3. [A]scertain whether the veteran is in receipt of [Social Security Administration] disability benefits and obtain copies of any determination and/or awards made on the veteran's behalf as well as the medical records relied upon concerning such.

4. [A]sk the veteran to clarify whether his employment with True Value Hardware was, in fact, his employment with Cotter and Company or [whether] they were different jobs with different employers. The veteran should also clarify his April 1992 statement that he was forced to leave four jobs.

5. [A]sk Cotter and Company the reason for the veteran's resignation in 1994. The

4

RO should also ascertain whether the veteran sustained any on-the-job injuries while working at the True Value Hardware distribution center or elsewhere after service and whether he filed any claims for Workers' Compensation benefits in connection with injuries during post-service employment . . . [T]he RO should request copies of any such medical records, as well as any decision and the medical records relied upon in awarding the veteran disability benefits from any State Workers' Compensation agency.

*Seth D. Brambley*, BVA 00-15003, at 19-20 (May 30, 2001). As the terms of the remand order make clear, the Board did not consider evidence as to the appellant's employment and medical record sufficiently complete to enable it to adjudicate the TDIU claim properly and fairly.

It is difficult to understand how the Board can maintain these divergent positions concerning the completeness of the record. With respect to extraschedular consideration, the Board found the record sufficient to conclude that the appellant's service-connected disabilities do not show a "marked interference with employment," 38 C.F.R. § 3.321(b)(1). Nevertheless, the Board concluded that additional employment and medical information was necessary to adjudicate fairly the TDIU claim. Although it is well settled that extraschedular consideration and TDIU claims are not necessarily "'inextricably interwined,'" *Colayong,* 12 Vet.App. at 537; *see Kellar*, 6 Vet.App. at 162, here both adjudications require *a complete picture* of the appellant's service-connected disabilities and their effect on his employability. 38 C.F.R. §§ 3.321(b)(1), 4.16; *see also* 38 C.F.R. §§ 4.1, 4.2, 4.10 (2002). Thus, it was premature for the Board to decline extraschedular consideration where the record was significantly incomplete in a number of relevant areas probative of the issue of employability. Therefore, on remand, the Board must make the requisite findings of fact and provide an adequate statement of reasons or bases on the issue of whether referral of the extraschedular consideration issue is warranted in light of the terms of the TDIU remand order.

The Court will not at this time address the other arguments and issues raised by the appellant. *See Best v. Principi,* 15 Vet.App. 18, 20 (2001) (per curiam order) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him.").

The Board's inconsistent treatment of the appellant's record is not altogether surprising given

5

the ambiguity within the disability ratings regulations. Indeed, this Court has noted the absence of guidelines for assigning ratings in extraschedular cases and for TDIU claims. *See Floyd,* 9 Vet.App. at 97 (noting that 38 C.F.R. § 3.321 does not include criteria or guidance for assigning particular extraschedular rating percentages); *Vettese v. Brown*, 7 Vet.App. 31, 35 (1994) (noting that TDIU claims focus on "'subjective'" factors not considered by ratings schedule).

The need to streamline and clarify the regulations was a major topic of discussion at the Court's Seventh Judicial Conference in September 2002. During the conference, the VA Under Secretary for Benefits summarized the efforts of the Secretary to revise, clarify, and restructure the C&P regulations in order to simplify them and make them more "user friendly" for veterans, their representatives, and ROs. As to the two issues addressed in this case, one possible avenue is to combine provisions for extraschedular ratings and a TDIU rating into a single regulation applying a continuum of disability. Such an approach might help avoid inconsistent application of the two rules.

## III. CONCLUSION

Upon consideration of the forgoing, the May 30, 2001, BVA decision is VACATED and the matter is REMANDED for further adjudication consistent with this opinion. On remand the appellant is free to proffer his arguments and additional evidence to the Board, and the Board must address any such arguments or evidence. *See Kay v. Principi,* 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West,* 12 Vet.App. 369, 372 (1999) (per curiam order) (on remand, appellant free to submit additional evidence and argument). "A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case." *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991); *see also* 38 U.S.C. §§ 5103(a), 5103A. The Board shall proceed expeditiously. *See* Veterans' Benefits Improvement Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" of claims remanded by the Board or Court); *see also Drosky v. Brown,* 10 Vet.App. 251, 257 (1997).

STEINBERG, *Judge*, concurring: For the reasons stated in the Court's opinion, I join in the Court's opinion vacating the Board of Veterans' Appeals (Board) decision and remanding the matter for further proceedings. However, I would also hold that the Board committed certain other errors warranting remand.

First, regarding the matter of referral for extraschedular consideration pursuant to 38 C.F.R. § 3.321(b)(1), the Board did not address in its statement of reasons or bases certain evidence favorable to the veteran. The Board is required to consider all evidence of record and to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

As argued by the appellant, the Board failed to discuss in its analysis the finding contained in a 1999 VA compensation and pension (C&P) social-worker report that the veteran should be "considered as unemployable by any definition of the term" (Record (R.) at 311). Certainly, a statement that relates directly to the issue of the veteran's employability should be discussed when determining whether his case should be referred to the Director of the C&P Service for extraschedular consideration under 38 C.F.R. § 3.321(b). Additionally, the Board failed to mention that the veteran had been assigned a Global Assessment of Functioning (GAF) score of 40 in that same September 1999 C&P social-worker report (R. at 311). The Board thus did not carry out its duty to analyze the probative value of that GAF score and to provide any reasons for its rejection of

7

that evidence. *See Caluza, Gabrielson,* and *Gilbert,* all *supra*. That GAF score may be indicative of a high level of occupational impairment, *see Richard (Mary) v. Brown*, 9 Vet.App. 266, 267 (1996) (recognizing that GAF score of 50 (signifying considerably less occupational impairment than GAF score of 40) indicated "serious impairment in . . . occupational . . . functioning"), and is a significant factor in determining the veteran's capacity for self support, *see Bowling v. Principi*, 15 Vet.App. 1, 14 (2001) (remanding because, inter alia, Board, in adjudicating unemployability claim, failed to address evidence of record that appellant had been assigned GAF score of 50). The Court, therefore, should also remand the extraschedular-rating matter to the Board to provide an adequate statement of reasons or bases that discusses the material evidence not evaluated by the Board that appears to be favorable to the appellant. *See* 38 U.S.C. § 7104(d)(1); 38 C.F.R. § 3.321(b)(1) (2002); *Caluza, Gabrielson,* and *Gilbert,* all *supra*.

In analyzing the appellant's entitlement to extraschedular-rating consideration for each of his service-connected disabilities, the Board concluded that the evidence in the record did not demonstrate a marked interference with employment (or frequent periods of hospitalization) pursuant to 38 C.F.R. § 3.321(b) for either his low back strain or degenerative arthritis of the thoracic spine. R. at 15, 17; *see* 38 C.F.R. § 3.321(b)(1). However, the Board erred in its application of the regulation by failing to determine whether the appellant's service-connected disabilities **as a whole** entitled him to extraschedular-rating consideration under § 3.321(b)(1). When VA evaluates a case for extraschedular consideration, the regulation directs the examination of the veteran's "average earning capacity impairment due exclusively to his service-connected disability or **disabilities**." 38 C.F.R. § 3.321(b)(1) (emphasis added). In this case, although the RO had evaluated the veteran's two service-connected disabilities collectively as a basis for extraschedular consideration, the Board neglected to do so. Because the Board did not apply § 3.321(b)(1) correctly, its statement of reasons or bases was not adequate as to its basis for upholding the RO's decision not to make a referral for extraschedular consideration. *See* 38 U.S.C. § 7104(a), (d)(1); 38 C.F.R. § 3.321(b)(1); *Fleshman v. Brown*, 9 Vet.App. 548, 552-53 (1996); *Allday* and *Gilbert,* both *supra*.

Furthermore, the Board failed to provide an adequate statement of reasons or bases regarding VA's failure to obtain certain medical records ("YRMC" records) that were specifically identified by the appellant in an April 1999 statement (R. at 244) that he submitted to the RO. The Board

stated merely: "Although it appears that he may have identified treatment records for two outpatient visits at 'YRMC' in late 1998 and that the records of such visits may not be in the file, subsequent outpatient records have been obtained and the veteran was afforded a VA spinal examination in August 1999." R. at 13. That statement is inadequate to enable the appellant to understand why the Board did not obtain, or at least seek to obtain, those records that were specifically identified by the appellant. *See Caluza, Gabrielson,* and *Gilbert,* all *supra*; *see also Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991) (holding that under prior 38 U.S.C. §§ 4104(d)(1) and 5107(a) VA is obligated to respond to specific "request for VA assistance one way or the other").

Additionally, the Board violated the new section 5103A duty-to-assist provisions enacted in the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA), regarding those records. New section 5103A provides, in pertinent part:

> **§ 5103A. Duty to assist claimants**
>
> (a) DUTY TO ASSIST. – (1) The Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary.
>
> . . . .
>
> (b) ASSISTANCE IN OBTAINING RECORDS. – (1) As part of the assistance provided under subsection (a), the Secretary shall make reasonable efforts to obtain relevant records (including private records) that the claimant adequately identifies to the Secretary and authorizes the Secretary to obtain.
>
> (2) Whenever the Secretary, after making such reasonable efforts, is unable to obtain all of the relevant records sought, the Secretary shall notify the claimant that the Secretary is unable to obtain records with respect to the claim. Such a notification shall--
>
> (A) identify the records the Secretary is unable to obtain;

> (B) briefly explain the efforts that the Secretary made to obtain those records; and

> (C) describe any further action to be taken by the Secretary with respect to the claim.

38 U.S.C. § 5103A (a)(1), (b)(1)-(2). In this case, the Secretary did not comply with the provisions of this section. Although the appellant identified "YRMC" records in his April 1999 letter (R. at 244), the Board did not obtain these records. The Board reasoned that the failure of the Secretary to obtain the "YRMC" records was cured by the subsequent gathering of outpatient records and the provision of a VA medical examination. R. at 13. However, section 5103A does not provide that this failure can be cured; rather, as is evident from the provisions quoted above, section 5103A(b)(2) provides for a *specific* course of Secretarial action when a potentially applicable record is identified by a claimant and when it is unobtainable. There is in the record on appeal no indication either of VA's "reasonable efforts" to obtain "YRMC" records or of VA's having notified the veteran of the reason for its failure to obtain such records. *See* 38 U.S.C. § 5103A(b)(2); *see also Godwin, supra*. Therefore, the case should be remanded on this ground as well.