James E.G. CORRY, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–1330.

United States Court of Veterans Appeals.

Submitted May 13, 1992.

Decided Sept. 18, 1992.

As Amended Sept. 29, 1992.

William G. Smith, Los Angeles, Cal., was on the brief, for appellant.

James A. Endicott, Jr., General Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Craig M. Kabatchnick, Washington, D.C., were on the brief, for appellee.

Before FARLEY, MANKIN and STEINBERG, Associate Judges.

FARLEY, Associate Judge, filed the opinion of the Court, in which MANKIN, Associate Judge, joined. STEINBERG, Associate Judge, filed a dissenting opinion.

FARLEY, Associate Judge:

Appellant seeks reversal of a Board of Veterans' Appeals (Board or BVA) decision denying his reopened claim for service connection for his neuropsychiatric disorder. The appellant has failed to demonstrate that the Board committed factual or legal error and therefore the decision will be affirmed.

I.

On August 17, 1972, when he was 19, appellant was diagnosed as schizophrenic, paranoid type, and entered a State of Cali-

fornia mental health facility (CSH), first involuntarily and then under a voluntary treatment agreement. R. at 10. He reported having been "in a mental hospital in Switzerland" previously. *Id.* After "poor adjustment to this facility," including one departure in a stolen car, appellant was discharged on January 2, 1973, "against medical advice" and with a recommendation that he "not be readmitted to this facility as he is uncooperative and appears to have reached maximum benefits at this time." *Id.* Appellant was again hospitalized at CSH with a diagnosis of schizophrenia, chronic undifferentiated type, from June 17, 1974, until discharge on August 20, 1974. R. at 11. An admission note dated June 24, 1980, states that appellant was being "readmitted to CSH for the 4th time" with the same diagnosis. R. at 12. The evaluation report notes that appellant "has managed to stay out of the hospital for close to two years." *Id.* The record also contains a diagnostic staff note which recommends referral to "Psychiatric Evaluation" dated July 25, 1980. R. at 22. Less than two months later, on September 15, 1980, appellant joined the U.S. Marine Corps. R. at 7; *see also* R. at 8 ("Severe mental problems surfaced thereafter leading to multiple psychiatric hospitalizations and eventual enlistment in the Marine Corps.")

After "an acceptable level of performance as indicated by average conduct and proficiency marks of 4.5 and 4.4 and no nonjudicial punishments," appellant was assigned to a temporary detail at 29 Palms in California. R. at 7. The detail was terminated when appellant exhibited "sub-standard work performance and [text unreadable] attitude toward authority." *Id.* "On his return to MCAS, El Toro via privately owned vehicle, [he] was apprehended by local law enforcement personnel 6 May 1982." *Id.* He was arrested "while wandering through neighborhood backyards 'looking for dead bodies'." R. at 8. After admission to the San Bernardino Mental Health Facility, appellant was transferred to the Naval Regional Medical Center, Long Beach, California, where he was admitted with a diagnosis of "Paranoid schizophrenia, chronic EPTS [Existed Prior To Service] not aggravated." R. at 9.

An informal inquiry was conducted to determine appellant's fitness for duty. The report, dated July 19, 1982, concluded as follows:

All attending physicians concur that [appellant's] condition is diagnosed chronic undifferentiated schizophrenia.... [His] malady occurs sporadically, having been involuntarily admitted to a mental facility in August 1972, June 1974, August 1978, June 1980 and again in May 1982. Also, each admittance was preceded by an abnormal behavioral act....

\* \* \* \* \* \*

In view of the above stated facts and considering [his] present condition and diagnosed *chronic* disorder it is recommended that [he] be immediately discharged from the service.... Based on [his] dates of psychiatric treatment and his failure to reveal same prior to oath of enlistment, a fraudulent enlistment did occur. On this point I concur with physicians' statement ... that to pursue a discharge on the premise of fraud would prove fruitless considering [his] past and present state of mental health.

R. at 6 (emphasis in original). Appellant was granted an honorable discharge for the reason of "Unsuitability–Personality disorders" (R. at 1) on August 27, 1982. R. at 23.

In July 1986, appellant filed a claim for compensation and pension with the Veterans' Administration (now the Department of Veterans Affairs) (VA) which listed his disability as "1970 & on-going—Manic Depressive." R. at 24. Appellant also indicated that he had been hospitalized at the Long Beach Naval Hospital in 1982 for a "nervous condition" (*Id.*) as well as in 1984 and 1985 in New York for "Manic/Depre[ssion]." R. at 25. Subsequently, appellant reported an additional hospitalization from 1985–1986. R. at 30. A physical examination was conducted (R. at 31–33) and a psychiatric examination was requested but apparently never conducted. R. at 35, 37. In a rating decision dated April 5,

1987, appellant's claim for service connection for his disability was denied:

It is clear from the record that the veteran's hospitalization in 5/82 was just one in a series with essentially the same pattern as those prior to service and that it does not reflect aggravation of the preservice chronic, undifferentiated schizophrenia.

R. at 39. Appellant was advised of the denial by letter dated April 10, 1987 (R. at 40) and provided with notice of his appellate rights. R. at 41. Although it is not contained in the record on appeal, a letter to appellant dated May 19, 1987 (R. at 43) refers to receipt of his "reopened claim" and advised that the claim was previously denied as indicated in the letter of April 10, 1987, "because there is nothing in your records to indicate that this condition was incurred in or aggravated by your military service." R. at 43. The appellant was advised that in order to reopen his claim, he "must submit new and material evidence." *Id.*

In November 1988, appellant submitted a VA Form 21–4138, STATEMENT IN SUPPORT OF CLAIM. R. at 44. The VA responded by advising that the April 1987 denial was final because appellant had not appealed within one year and that new and material evidence was required in order to reopen the claim. R. at 45. Another VA Form 21–4138 was received by the VA on December 14, 1988, on which appellant expressed his disagreement with the denial of service connection, noted that his condition had worsened, and stated that he "was unable to respond to your initial denial due to the nature of my condition." R. at 46, 47. In a rating decision dated January 9, 1989, appellant's claim was denied because the Notice of Disagreement (NOD) was "not timely filed" and because of the lack of new and material evidence. R. at 48.

In a letter dated February 1989, appellant expressed the view that he had been misdiagnosed at the Long Beach Naval Hospital and that the actual diagnosis should have been "manic-depressive disorder." R. at 50. He also asked for assistance in locating his former commanding officer "who noticed the symptoms of an advancing manic stage and who terminated my duty based on my behavior." *Id.* In a letter to a VA adjudication officer dated April 19, 1989, Yezid Melo, M.D., advised that appellant "has a history of Schizoid Personality Disorder dating back to 1978 and has been hospitalized for this illness on a number of occasions." R. at 52–53. In addition to providing information as to appellant's then-current condition, Dr. Melo stated:

It is clear that this patient's episodes of mental illness preceded his enlistment in the Marine Corps in 1980, but this condition appears to have deteriorated while in the service and this deterioration led to his poor mental condition and consequent hospitalization on May 10, 1982.

R. at 53. By letter dated May 19, 1989, appellant was advised of a rating decision which once again denied his claim. An NOD was filed on August 1, 1989. R. at 64. A Statement of the Case dated October 2, 1989, was sent to appellant. R. at 68. A hearing was held on December 26, 1989. R. at 81–89. The Hearing Officer denied the claim on January 24, 1990 (R. at 92) and appellant perfected his appeal. R. at 94.

The BVA upheld the denial of service connection for appellant's neuropsychiatric disorder. *James E. G. Corry*, BVA 90–29929 (Aug. 30, 1990). The BVA first noted that the April 1987 rating had become final due to appellant's failure to file a timely NOD within one year of the decision. The Board then stated that the issue for review is whether the evidence received since the April 1987 rating

provides a new factual basis which demonstrated that a neuropsychiatric disorder is of service origin or aggravation. That evidence includes a statement from a private physician wherein the veteran was currently diagnosed to have a bipolar disorder; an opinion was also rendered that his mental condition deteriorated in service. However, on the basis of the entire evidentiary record, including evidence bearing on treatment rendered the veteran for problems of a neuropsychiatric nature beginning in 1972,

the opinion that the veteran's mental condition worsened during service is not sustainable. *Corry*, BVA 90–29929, at 3–4. A timely Notice of Appeal was filed.

## II.

■ Pursuant to 38 U.S.C. § 7105(c) (formerly § 4005(c)), claims adjudications are final unless a Notice of Disagreement is filed "in accordance with this chapter within the prescribed period." The prescribed period is "within one year from the date of mailing of notice of the result of initial review or determination." 38 U.S.C. § 7105(b)(1). The exception to this rule is 38 U.S.C. § 5108 (formerly § 3008) which states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary [of Veterans Affairs] shall reopen the claim and review the former disposition of the claim." *See Thompson v. Derwinski*, 1 Vet.App. 251, 253 (1991). In *Manio v. Derwinski*, 1 Vet.App. 140 (1991), this Court established that § 5108 requires a two-step analysis when a veteran seeks to reopen a claim based upon new evidence. First, it must be determined whether the evidence is "new and material"; second, if the evidence is "new and material," then the claim must be reopened and the merits of the claim must be evaluated "in light of *all* the evidence, both new and old." *Manio*, 1 Vet.App. at 145 (emphasis in original).

■ Here, the BVA did not specifically determine whether appellant had submitted sufficient new and material evidence to warrant reopening. However, it is clear that the BVA moved to the second part of the *Manio* test and made its decision "on the basis of the entire evidentiary record, including evidence bearing on treatment rendered the veteran for problems of a neuropsychiatric nature beginning in 1972." *Corry*, BVA 90–29929, at 4. Therefore, even if the BVA's failure to address the first part of the *Manio* test constituted error, such error is harmless. 38 U.S.C. § 7261(a)(4); *see Kehoskie v. Derwinski*, 2 Vet.App. 31, 34 (1991) (where a claim should not have been reopened, if the Board nevertheless denied the claim, such error would be considered harmless); *Godwin v. Derwinski*, 1 Vet.App. 419, 424–25 (1991); *Thompson v. Derwinski*, 1 Vet. App. 251, 254 (1991).

## III.

■ In concluding that appellant's neuropsychiatric disorder was not incurred in or aggravated during service, the BVA made a factual determination. In reviewing a finding of fact made by the Board, the Court can only "hold unlawful and set aside such finding if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *see also Gilbert*, 1 Vet.App. at 52. In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert*, 1 Vet.App. at 53.

Based on a thorough review of the record, the Court holds that there is more than a plausible basis to support the BVA's conclusion that Dr. Melo's conjecture—that appellant's "condition appears to have deteriorated while in the service and this deterioration led to his poor mental condition and consequent hospitalization on May 10, 1982" (R. at 53)—cannot be sustained in light of the total record which includes records of lengthy hospitalizations dating back to 1972 and reports of hospitalization even prior to that time, records and reports which Dr. Melo did not mention.

## IV.

■ Our dissenting colleague takes the Board and the majority to task for failing to recognize his view that a December 1988 statement by the veteran "reasonably rais-

es" and "implicitly raised a claim for a 'good cause' extension of the one-year NOD filing period." We disagree.

At the outset, we note that there is no legal entitlement to an extension; the regulation commits the decision to the sole discretion of the Secretary. 38 C.F.R. § 3.109(b) ("*may* be extended") (emphasis added). The regulation requires that

> [w]here an extension is requested after expiration of a time limit, the required action must be taken concurrent with or prior to the filing of a request for extension of the time limit, and good cause must be shown as to why the required action could not have been taken during the original time period and could not have been taken sooner than it was.

38 C.F.R. § 3.109(b). Appellant's statement ("I was unable to respond to your initial denial due to the nature of my condition" (R. at 46)) was insufficient, as a matter of law, to satisfy the regulatory requirement that "good cause must be shown as to why the required action [i.e., the filing of an NOD] could not have been taken during the original time period and could not have been taken sooner than it was." 38 C.F.R. § 3.109(b). We find that appellant did not request a discretionary extension and that there is no basis in fact which would permit, much less require, that the Board or this Court join the dissent in speculating that such a request was "implicitly raised" on this record. *Cf. Herzog v. Derwinski*, 2 Vet.App. 502, 503 (1992).

## V.

Upon consideration of the record and the briefs of the parties, the Court holds that appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal. *Gilbert*, 1 Vet.App. 49; *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States*, 899 F.2d 3 (Fed.Cir.1990). The Court is also satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)), and the benefit of the doubt doctrine of 38 U.S.C.

§ 5107(b) (formerly § 3007(b)). *See Gilbert, supra*. Accordingly, the August 30, 1990, decision of the Board of Veterans' Appeals is AFFIRMED.

STEINBERG, Associate Judge, dissenting:

The majority concludes that the August 30, 1990, decision of the Board of Veterans' Appeals (BVA or Board) contains neither factual error nor prejudicial legal error, and, therefore, affirms. Because I disagree with the majority's conclusion that the Board properly adjudicated the claim on the basis of all the evidence, because I believe that the majority's opinion ignores the Board's failure to provide an adequate statement of reasons or bases and to assist the veteran in developing the facts pertinent to his claim, neither of which is "harmless error", and because I disagree with the majority's decision not to address several arguments legitimately raised by the appellant in this appeal, I dissent.

### I. Reopening and Readjudication

Pursuant to 38 U.S.C. § 5108 (formerly § 3008), a previously and finally disallowed claim must be reopened by the Secretary when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C. § 7104(b) (formerly § 4004). "New" evidence is evidence which is not "merely cumulative" of other evidence in the record. *Colvin v. Derwinski*, 1 Vet. App. 171, 174 (1991). For evidence to be "material", it must be "relevant and probative" and "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Ibid.* On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *See Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If it is, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 215

(1991). The determination as to whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1) (formerly § 4061). *See Masors v. Derwinski*, 2 Vet. App. 181, 185 (1992); *Jones*, 1 Vet.App. at 213; *Colvin, supra.*

The majority correctly points out that the Board failed to apply the first part of this test to determine whether there was "new and material" evidence to justify reopening the claim. However, the majority then concludes that "it is clear that the BVA moved to the second part of the test and made its decision 'on the basis of the entire evidentiary record'", and that, therefore, even if the Board's failure to address the first part of that test was error, such error was harmless. *See supra* p. 234.

As to the first part of the test, I would hold, contrary to the Secretary's assertion on appeal, that the veteran did submit new and material evidence requiring the Secretary to reopen his claim: namely, an April 19, 1989, statement from Dr. Yezid Melo, his psychiatrist, who stated:

> It is clear that this patient's episodes of mental illness preceded his enlistment in the Marine Corps in 1980, but his condition appears to have deteriorated while in the service and this deterioration led to his poor mental condition and consequent hospitalization on May 10, 1982.

R. at 53. This evidence is "new" because it is not cumulative of evidence previously in the record, and it is "material" because it is relevant to and probative of the veteran's claim that his psychiatric disability was aggravated by service and, if believed, it would create a reasonable possibility of changing the outcome of his previously disallowed claim. Therefore, I conclude that the Board was required to reopen the veteran's claim and readjudicate it on the basis of all evidence and material of record. *See* 38 U.S.C. § 7104(a) (formerly § 4004).

As to the second part of the *Manio* test, although, as the majority points out, the BVA gave some indication in its discussion that it was considering the new evidence in relation to "the entire evidentiary record", the Board's stated findings of fact and conclusions of law demonstrate that the Board did not base its ultimate decision upon the entire record. The Board's "FINDINGS OF FACT" state, in their entirety:

> 1. In April 1987, the agency of original jurisdiction denied entitlement to service connection for schizophrenia. Following proper notification, an appeal was not received within the one-year time period prescribed by law.
> 2. The evidence received *since the April 1987 determination* does not demonstrate that a neuropsychiatric disorder is of either service origin or that it worsened therein.

*Corry,* BVA 90–29929, at 4 (emphasis added). The Board's "CONCLUSION OF LAW" states, in its entirety:

> The evidence received *since the unappealed April 1987 decision by the agency of original jurisdiction*, which denied entitlement to service connection for schizophrenia, does not establish a new factual basis which shows that a neuropsychiatric disorder, to include bipolar disorder, was incurred in or aggravated by peacetime service. (38 U.S.C. 331, 4005 [now §§ 1131, 7105] 38 C.F.R. 3.104(a), 19.129(a))

*Id.* at 4 (emphasis added).

The Board's findings of fact and conclusion of law demonstrate that it denied the claim because the new evidence, *standing alone,* did not provide a "new factual basis" for allowing the claim. The Court has previously held that this "new factual basis" standard is an incorrect standard for evaluating claims to reopen under applicable law and regulation and the precedents of the Court. *Jones,* 1 Vet.App. at 213–15. The Board's failure to base its decision on "all evidence and material of record" (38 U.S.C. § 7104(a) (formerly § 4004)) is error requiring remand. It is not harmless error, because the application of the proper standard on a reopened claim requires the Board to make factual findings as to the weight and credibility of all the evidence and as to whether the evidence is in relative equipoise for purposes of applying the benefit-of-the-doubt rule. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57–58 (1990).

Because this Court is a court of review, it is not appropriate for the Court to make such de novo findings, based on the evidence of record. *See Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991); 38 U.S.C. § 7261(c) (formerly § 4061).

## II. Reasons or Bases and Duty to Assist

Even if I were to find that the Board applied the proper standard for adjudicating the reopened claim, I would not agree with the majority that affirmance is proper. The majority's finding that there is a "plausible" basis for the BVA's findings of fact, and that, hence, those findings are not clearly erroneous (*see* 38 U.S.C. § 7261(a)(4) (formerly § 4061)), does not end the Court's inquiry. The Court is statutorily required to set aside BVA decisions made without observance of procedure required by law, 38 U.S.C. § 7261(a)(3)(D) (formerly § 4061), and to compel action of the Secretary of Veterans Affairs (Secretary) unlawfully withheld or unreasonably delayed. 38 U.S.C. § 7261(a)(2) (formerly § 4061). Among other things, these statutory requirements mandate that the Court set aside BVA decisions which fail to comply with the requirements that the Board support its decisions with an adequate statement of "the Board's findings and conclusions, and the reasons or bases for those findings or conclusions", 38 U.S.C. § 7104(d)(1) (formerly § 4004), and that the Board assist claimants in developing the facts pertinent to their well-grounded claims, 38 U.S.C. § 5107(a) (formerly § 3007). *See, e.g., Gilbert,* 1 Vet.App. at 56–57 (reasons-or-bases requirement); *Masors,* 2 Vet.App. at 186–88 (duty to assist). In the present case, the Board has failed to comply with both requirements.

The reasons-or-bases requirement of 38 U.S.C. § 7104(d)(1) requires the Board to provide an analysis of "the credibility and probative value of the evidence submitted by or on behalf of the veteran in support of his claim", and an explanation for the rejection of evidence supporting the veteran's claim. *Gilbert, supra; see also Wilson v. Derwinski,* 2 Vet.App. 16, 19–20 (1991); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169 (1991). The Board's reasons or bases

must be " 'sufficient to enable a claimant to understand, not only the Board's decision, but also the precise basis for that decision' as well as to facilitate review by the Court." *Masors,* 2 Vet.App. at 188 (*quoting Gilbert,* 1 Vet.App. at 56). The Board's reasons or bases in its August 30, 1990, decision fall far short of this mark.

In support of his reopened claim, the veteran submitted Dr. Melo's April 1989 statement that "his condition appears to have deteriorated while in the service". R. at 53. Pursuant to 38 U.S.C. § 1153 (formerly § 353), "[a] preexisting injury or disease will be considered to have been aggravated by active ... service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease." *See* 38 C.F.R. § 3.306 (1991); *cf. Hunt v. Derwinski,* 1 Vet.App. 292, 296–97 (1991) ("flare-ups" of preexisting condition do not constitute aggravation if there is no increase in severity of underlying disability). The Board rejected Dr. Melo's statement by stating:

[O]n the basis of the entire evidentiary record, including evidence bearing on treatment rendered the veteran for problems of a neuropsychiatric nature beginning in 1972, the opinion that the veteran's mental condition worsened during service is not sustainable.

*Corry,* BVA 90–29929, at 3–4. As the Court stated in *Gilbert,* such a "bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor clear enough to permit effective judicial review, nor in compliance with statutory requirements." *Gilbert,* 1 Vet.App. at 57.

The Board's decision is completely devoid of any explanation for its conclusion that Dr. Melo's "opinion that the veteran's mental condition worsened during service is not sustainable." The Board makes reference to the medical records of the veteran's treatment for a psychiatric disorder prior to service as providing a basis for rejecting Dr. Melo's opinion. However, the fact that the veteran received such treatment prior to service is evidence only that a psychiat-

ric condition existed prior to service; it does not speak to the issue of whether the preexisting condition increased in severity during service. The Board nowhere discussed the severity of the veteran's condition prior to, during, or subsequent to service; nor did it refer to any of the findings or symptomatology noted on any of the medical records. By definition, the determination as to whether a condition increased in severity during service requires a comparison of the severity of the condition prior to, during, and subsequent to service. It is tautological that the fact that a condition preexisted service does not itself provide an adequate basis for rejecting a medical opinion that the preexisting condition worsened during service. Because the Board provided no reasons or bases for its rejection of the veteran's medical evidence, remand is required to allow the Board to issue a decision which complies with statutory requirements.

Pursuant to 38 U.S.C. § 5107(a), the Department of Veterans Affairs (VA) is required to assist a claimant with a well-grounded claim in developing the facts pertinent to his or her claim. *See Masors*, *supra*. "A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a)]." *Moore (Howard) v. Derwinski*, 1 Vet.App. 401, 405 (1991) (quoting *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990)). In the present case, the veteran's claim for aggravation of his preexisting psychiatric condition was well grounded on the basis of Dr. Melo's statement that the condition "appears to have deteriorated while in the service". Therefore, VA and the BVA were obligated to assist the veter-

an in developing the facts pertinent to that claim.

The Board failed to meet its duty-to-assist obligation as to this claim. In a February 1989 letter to the Regional Office (RO), the veteran stated that he needed to locate his former commanding officer, whose name he provided, in order to obtain evidence as to the severity of his psychiatric condition in service, and requested the RO to assist him in locating him. R. at 50. Neither the RO nor the BVA apparently ever responded to that request. "Inherent in the duty-to-assist obligation and the *Gilbert* explanation mandate is a requirement for the Secretary to respond to a claimant's request for VA assistance one way or the other." *Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991); *see* 38 C.F.R. § 3.159(b) (1991). Because the veteran here submitted a well-grounded claim, VA, and subsequently the BVA, were required to assist him in locating his former commanding officer or explain why they could not do so.

### III. Extension of Time Under 38 C.F.R. § 3.109(b)

The Board's decision is infected with an additional error, which the appellant has raised here on appeal. In his brief, the appellant asserts that, because his psychiatric disability prevented him from filing a timely Notice of Disagreement (NOD) with the 1987 RO decision in order to perfect his appeal to the BVA, the rules of administrative finality should not have been applied to foreclose his original claim for benefits which was denied by the RO in that 1987 decision. Br. at 20–21. This claim was reasonably raised to the RO and the BVA, and the Board's failure to adjudicate it was error under the Court's precedents.[1]

The veteran originally filed a claim in July 1986 for service connection for a psy-

---

1. Resolution of this issue is important for two reasons. First, if the veteran has shown "good cause" for extending the one-year period for filing an NOD with the April 1987 RO decision, or if the NOD filing period were equitably tolled in this case, any benefits awarded upon proper adjudication on remand would be effective from the date of the filing of his original claim in 1986, rather than from the date of his reopened claim in 1988. Second, in this event, the 1988 BVA decision would be an appeal from the

veteran's original claim in 1986, rather than a reopening of his 1988 claim and, hence, the Board would not be called upon to determine whether there was "new and material" evidence to reopen the claim. However, on my analysis, the importance of the resolution of the NOD extension issue does not extend to this second factor, since I would hold, as I noted in part I, above, that the veteran has submitted new and material evidence to reopen his claim.

chiatric disability. The claim was denied by the RO in its April 1987 decision (R. at 38), and, in an April 10, 1987, letter, the RO informed the veteran of the decision and of the procedure and time limit for appealing the decision. R. at 40–41. Shortly thereafter, in May 1987, the RO sent the veteran another letter, which stated:

> We have received your reopened claim for your nervous condition.
>
> Service connection for this condition was previously denied in our letter to you on April 10, 1987, because there is nothing in your records to indicate that this condition was incurred in or aggravated by your military service.
>
> In order to reopen your claim, you must submit new and material medical evidence.
>
> No further action will be taken on your claim at this time.

R. at 43. The record does not indicate what prompted this letter.

In November 1988, the veteran sought to appeal to the BVA the April 1987 RO denial of his claim. R. at 44. In a December 12, 1988, statement in support of his claim, the veteran stated:

> I disagree with your decision to not service-connect my nervous condition. My condition has worsened.
>
> I was unable to respond to your initial denial due to the nature of my condition.
>
> I request a statement of the case.

R. at 46. In a January 23, 1989, letter, the RO informed the veteran that the April 1987 RO decision had become final because he had failed to appeal that decision within one year of the date on which he had received notice of it, and that the claim could not be reopened unless he submitted new and material evidence. R. at 49. Subsequently, as I have concluded in part I, above, the veteran submitted new and material medical evidence to reopen his claim; the BVA decision here on appeal followed.

Pursuant to VA's duty to assist, the BVA has an obligation to "review all issues which are reasonably raised from a liberal reading" of "all documents or oral testimony submitted prior to the BVA decision." *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991); *Myers v. Derwinski*, 1 Vet.App. 127, 129 (1991); *cf.* 38 C.F.R. § 19.123(a) (1991) (BVA must construe "in a liberal manner" arguments made on VA Form 1–9 appeal to BVA). In the present case, the veteran's December 1988 statement asserting that his disability prevented him from filing an NOD within the applicable time limit, and requesting a Statement of the Case, reasonably raises a request for an extension of time, for good cause, in which to file an NOD in response to the April 1987 RO decision. Therefore, the BVA had an obligation to address that request.

In order to initiate an appeal of an adverse RO decision, a claimant must submit an NOD within one year after the date on which notice of the adverse decision is mailed to the claimant. *See* 38 U.S.C. § 7105(a), (b)(1) (formerly § 4005); 38 C.F.R. § 19.129 (1991). If no NOD is filed within that time period, "the action or determination shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title." 38 U.S.C. § 7105(c) (formerly § 4005); *see* 38 C.F.R. § 19.129. Pursuant to his authority to provide regulatory exceptions to finality where an NOD is not timely filed, the Secretary has promulgated the regulation in 38 C.F.R. § 3.109(b) (1991), which states:

> Time limits within which claimants or beneficiaries are required to act to perfect a claim or challenge an adverse VA decision *may be extended for good cause shown.* Where an extension is requested after expiration of a time limit, the required action must be taken concurrent with or prior to the filing of a request for extension of the time limit, and good cause must be shown as to why the required action could not have been taken during the original time period and could not have been taken sooner than it was. Denials of time limit extensions are separately appealable issues.

(Emphasis added.) This regulatory provision allows "good cause" extension of the one-year time limit for filing NODs. The statutory provision of 38 U.S.C. § 7105

makes clear that the time limit for filing an NOD is a "[t]ime limit within which claimants or beneficiaries are required to act to ... challenge an adverse VA decision", and thus the NOD time limit is subject to extension under the terms of regulation section 3.109(b).

The veteran's December 12, 1989, statement implicitly raised a claim for a "good cause" extension of the one-year NOD filing period pursuant to section 3.109(b). The veteran expressed disagreement with the previous denial of his claim and stated that his psychiatric disability had prevented him from filing an NOD within the one-year time period. *Cf.* 38 C.F.R. §§ 19.-159(c), 19.174(c) (1991) ("good cause" for extension of time for doing certain acts before the BVA includes illness of appellant or his representative and incapacity of representative). A liberal reading is not necessary in this case to discern that, in offering that explanation for his failure to file a timely NOD, the veteran was asserting that his explanation constituted good cause for allowing him to file the NOD beyond the one-year period. This conclusion follows from the veteran's request, in his December 1988 statement, for a Statement of the Case, thus demonstrating that he believed his statement constituted a valid NOD, notwithstanding that it was untimely filed. *See* 38 U.S.C. § 7105(d)(1) (formerly § 4005) (when claimant files NOD, the RO must furnish a Statement of the Case unless the case is otherwise resolved after the NOD is filed).

The fact that the veteran did not cite regulation section 3.109(b) as the provision under which his "good cause" extension request should be considered does not excuse the Board's failure to apply that regulation. The Court has repeatedly held that the Board is required to consider a veteran's claims under all applicable provisions of law and regulation whether or not the claimant specifically raises the applicable provision. *See Douglas v. Derwinski,* 2 Vet.App. 435, 440 (1992) (en banc) (*Douglas*

*II* ); *Douglas v. Derwinski,* 2 Vet.App. 103, 109 (1992) (*Douglas I* ); *Schafrath v. Derwinski,* 1 Vet.App. 589, 592–93 (1991); *Akles v. Derwinski,* 1 Vet.App. 118, 121 (1991); *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990). Therefore, because the veteran here raised a claim to which the provisions of section 3.109(b) reasonably would apply, the Board had an obligation to consider his request under that regulation and to provide reasons or bases for its decision on that request.

Furthermore, the Board's failure even to consider the veteran's request for a good cause extension of time may implicate serious constitutional issues. Several U.S. courts of appeals have held, in the closely analogous context of Social Security disability administrative adjudications, that applying rules of administrative finality, or failing to toll, on equitable grounds, the period for filing an administrative or judicial appeal, where claimants' mental disabilities prevented them from perfecting an appeal from an administrative decision, might violate constitutional due process requirements.[2] The possibility that failure to grant an extension of time to a claimant whose mental disability prevented the timely filing of an appeal could violate constitutional due process is further reason why the BVA must, at a minimum, apply its own regulations to determine whether a claimant alleging such a basis for an extension of time has shown "good cause" for the extension under section 3.109(b). If the regulatory "good cause" issue is decided adversely to the appellant, then the constitutional due process question, also raised by the appellant in this appeal, would need to be addressed.

For the reasons set forth above, I believe that the Board erred in failing to determine whether the veteran here has shown "good cause" for extending the one-year period for filing an NOD, or whether the filing

**2.** *See Canales v. Sullivan,* 936 F.2d 755 (2d Cir. 1991); *Culbertson v. Secretary of Health & Human Services,* 859 F.2d 319 (4th Cir.1988); *Elchediak v. Heckler,* 750 F.2d 892 (11th Cir. 1985); *Parker v. Califano,* 644 F.2d 1199 (6th Cir.1981); *Torres v. Secretary of Health, Education, and Welfare,* 475 F.2d 466 (1st Cir.1973).

period deadline must be equitably tolled,[3] on the asserted ground that his mental disability prevented him from complying with the one-year limitation period. Because resolution of these questions involves factual determinations as to whether the veteran's psychiatric disability in fact prevented him from complying with the one-year filing limit, that issue must be resolved in the first instance by the BVA or the RO. *See Webster,* 1 Vet.App. at 159.

I am unable to discern any basis for the majority's perfunctory conclusion that "[a]ppellant's statement ('I was unable to respond to your initial denial due to the nature of my condition' (R. at 46)) was insufficient, as a matter of law, to satisfy the regulatory requirement that 'good cause must be shown as to why the required action [i.e., the filing of an NOD] could not have been taken during the original time period and could not have been taken sooner than it was.'" As noted above, elsewhere in the Secretary's regulations, illness and incapacity are specifically listed as conditions which may, as a matter of law, constitute "good cause" for failure to comply with applicable time limits. *See* 38 C.F.R. §§ 3.105(h)(2), 19.159(c), 19.174(c) (1991); 57 Fed.Reg. 4088, 4120, 4121, 4128 (1992) (to be codified at 38 C.F.R. §§ 20.-702(c)(2), 20.704(c), 20.1304(b)). Also, as noted above, several U.S. Courts of Appeals have held that the application of statutes of limitations, rules of administrative finality, or the doctrine of res judicata to Social Security claimants who claim that their mental disability prevented them from timely perfecting an appeal raises a colorable constitutional due process claim. *See supra* note 2. I presume that the majority is not suggesting that section 3.109 provides less protection than is required by the Constitution.

A claim that a statute of limitations, administrative finality, or res judicata should not be applied due to a claimant's mental disability may be rejected if the claimant has presented no evidence of a mental disability that may be so disabling as to have prevented a timely appeal. *See Matos v. Secretary of Health, Education, and Welfare,* 581 F.2d 282, 287 (1st Cir. 1978); *Green v. Weinberger,* 500 F.2d 203, 205 (5th Cir.1974). However, where there is evidence of a significantly disabling mental condition and the claimant asserts that his or her disability prevented the timely perfection of an appeal, the trend in the courts of appeals is to remand the claim to agency adjudicators for findings and determinations as to whether the disability in fact prevented compliance with the time requirements for perfecting an appeal. *See Canales,* 936 F.2d at 758–59; *Young v. Bowen,* 858 F.2d 951, 955 (4th Cir.1988); *Elchediak,* 750 F.2d at 894–95; *Parker,* 644 F.2d at 1202–03; *Torres,* 475 F.2d at 468–69. In this case, the evidence of record demonstrates that the appellant has had a long-standing psychiatric disorder, diagnosed at various times as schizophrenia or bipolar (manic depressive) disorder. He has had at least four hospitalizations due to this condition, including one for a period of more than four months. R. at 8–14. In light of this evidence of a disabling psychiatric condition, the veteran's claim for a "good cause" extension of time to file his NOD states a legally sufficient basis for such an extension.

I note also that the veteran, in his brief, argues that the rules of administrative finality should not be applied to him for the additional reason that the RO sent him misleading information in May 1987 regarding his appeal rights. After receiving notice of the adverse RO decision on April 10, 1987, the veteran had one year in which to file an NOD, and was so informed in a letter from the RO. R. at 41. However, on May 19, 1987, the RO, rather inexplicably, sent a letter to the veteran stating that he could reopen his claim only upon submission of new and material "medical" evidence, and that no further action would be

---

**3.** *See Bowen v. City of New York,* 476 U.S. 467, 479–82, 106 S.Ct. 2022, 2029–31, 90 L.Ed.2d 462 (1986) (60-day period for filing judicial appeal from Social Security administrative adjudication may be equitably tolled); *Canales v. Sulli-* *van,* 936 F.2d at 758–59 (same); *Elchediak v. Heckler,* 750 F.2d at 894–95 (tolling 60-day period for filing administrative appeal from Social Security administrative adjudication).

taken on his claim at that time. R. at 43. Counsel for appellant argues that this letter "may have led the veteran to conclude that he could not appeal the decision of April 10, 1987 without submitting new evidence." Br. at 21. The veteran never raised this claim to the RO or BVA, and, consequently, neither entity was obliged to consider on that basis a "good cause" extension of time under section 3.109(b). Moreover, the veteran does not assert on appeal here that he actually relied upon the May 1987 RO letter to conclude that he no longer could file his NOD within one year after the April 1987 notice informing him of such an appeal right. Therefore, I find little merit to this particular claim raised for the first time on appeal. However, in determining the issue of whether the appellant's psychiatric disability prevented him from filing a timely NOD, the Board would certainly have to consider whether the potentially confusing May 1987 RO letter did in fact contribute to the veteran's not filing a timely NOD.

### CONCLUSION

In addition to the issues discussed above, the veteran in this case raised several issues which merit consideration, or at the very least a response, but which the majority does not address except (in some respects) for a boilerplate conclusion. These issues are: (1) whether the Board's conclusion that the veteran's psychiatric disability was not aggravated by service is a clearly erroneous finding of fact under 38 U.S.C. § 7261(a)(4); (2) whether the Board failed to provide adequate reasons or bases, pursuant to 38 U.S.C. § 7104(d)(1), explaining its evaluation of the evidence, including the veteran's testimony; (3) whether the Board failed to consider adequately the application of the benefit-of-the-doubt doctrine under 38 U.S.C. § 5107(b) (formerly § 3007), and provide reasons or bases for its consideration of that doctrine; and (4) whether the Court should adopt the "treating physician rule" in this case. Since I believe this case must be remanded for readjudication and further VA assistance, I also believe that these issues should be given further consideration by the panel.

Because I conclude that the Board failed to decide the veteran's claim under the proper standard and on the basis of all the evidence, and because I conclude that the Board's failure to provide an adequate statement of its reasons or bases and to assist the veteran and to address the appellant's reasonably raised request for an extension of the one-year NOD filing period, I cannot join in the majority's opinion. The deficiencies in the Board's decision require remand for further VA assistance, additional evidentiary development as necessary, and full readjudication of the claim on the basis of all the evidence and all arguments properly raised by the veteran. Accordingly, I respectfully dissent.