**Francesco D'AMATO, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1533.**

United States Court of Veterans Appeals.

April 8, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, Korean-conflict-era veteran Francesco D'Amato, appeals a May 30, 1991, Board of Veterans' Appeals (Board or BVA) decision denying service-connected disability compensation for retinitis pigmentosa (disease marked by progressive loss of retinal response, retinal atrophy, attenuation of retinal vessels, and clumping of pigment, with contraction of field of vision, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1456 (27th ed. 1988)). *Francesco D'Amato*, BVA 91–17426 (May 30, 1991). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. Summary disposition is appropriate in this case because it is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). The Court will vacate the BVA's decision and remand the matter for readjudication.

## I. BACKGROUND

The veteran served on active duty in the United States Army from February 1948 to October 1949 and from April 1952 to August 1952. R. at 7, 16. On the examination for entry into his first period of service in February 1948, his vision was found to be 20/100 in the right eye, and 20/200 in the left eye, correctable to 20/30 in both eyes. R. at 1. The examiner stated that

no defects were found. *Ibid.* At separation from his first period of service in October 1949, his vision was found to be 20/400, bilaterally, correctable to 20/40, bilaterally. R. at 3. The only defects noted were a fractured nose and chest pains. R. at 4. In November 1949, the veteran filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) an application for service-connected disability compensation for, inter alia, an eye disability claimed to have been incurred in August 1948. R. at 9. In a February 1950 decision, the RO denied service connection for the claimed eye disability, which it characterized as "refractive error", on the ground that it was a "[c]onstitutional or developmental abnormality" and, hence, not a "disability" for which service-connected compensation could be paid under the law. R. at 12; *see* 38 C.F.R. § 4.9 (1992).

The veteran reentered active duty in April 1952. R. at 14. The record does not contain a report of the entrance examination for that period of service. In July 1952, the veteran was diagnosed with "Defective Vision—myopia severe (retinitis pigmentosa)—which is a progressive disease". Supp.R. at 2. The examiner commented: "[C]laims has had eye trouble since age of five years with headaches—nightblindness; has a profile of E–2 worn glasses since 5 years of age." *Ibid.* The veteran's vision was found to be 10/400, bilaterally, correctable to 20/40, bilaterally. *Ibid.* An Army Medical Board in August 1952 recommended that the veteran be discharged due to his eye disability. R. at 14. The Board concluded that he suffered from severe myopia and retinitis pigmentosa, that those disabilities had begun in approximately 1934 and were not permanently aggravated by active duty, and that the veteran had become incapacitated for military service on about April 9, 1952, and should not have been inducted for his second period of service. *Ibid.* A clinical abstract accompanying the Medical Board's report stated that the veteran had reported that his vision had been getting progressively worse since the age of six, with a rapid decline in the previous two years, and that his two brothers had the same eye troubles. R. at 15.

In 1975, the veteran submitted to the RO a claim for service-connected disability compensation for his eye disability. R. at 17–20. In an April 1976 decision, the RO denied service connection for the eye disability on the ground that it had existed prior to service and had not been aggravated by service, but awarded non-service-connected pension on account of that disability. R. at 21, 25. The veteran subsequently submitted evidence in support of his claim, including a 1976 statement from a physician, Dr. Donald Nelson, stating that the veteran's retinitis pigmentosa had been "1st diagnosed at Fort Ord Hospital 1949 By Me Personally". R. at 124.

In a May 1977 decision, the BVA concluded that the veteran's retinitis pigmentosa was a "congenital or developmental defect" and, as such, was not compensable under the law, and that it had not been aggravated during the veteran's active service. R. at 39–41. In November 1985, when he sought to reopen his claim, the veteran testified under oath before the RO that he had not had any eye problems prior to service; that he had worn only non-prescription "dime-store" glasses prior to his first period of service; and that his work in service as a clerk, which involved filling out many forms and working under fluorescent lights, caused his eye disability. R. at 48–51. In a March 1986 decision, the BVA again denied service connection on the grounds that the retinitis pigmentosa was a congenital or developmental defect and that there was no evidence that the veteran's eye disability was incurred in or aggravated by service. R. at 61–62.

In an October 1988 reconsideration decision, the BVA again denied service connection for retinitis pigmentosa. The Board noted that, since the 1986 BVA decision, the veteran had submitted "copies of extensive preservice clinical information concerning his eye disorder" (R. at 83); however, the referenced preservice records apparently are not included in the record on appeal before this Court. The Board also noted the veteran's contention that because his retinitis pigmentosa was first diagnosed during his service in 1949 the BVA had

erred in denying service connection for that condition. R. at 85. In its decision, the Board stated:

> Of particular import in this regard is the clinical history which the medical board proceedings took into account. This history clearly shows that the veteran had visual problems prior to service.... Assuming that Dr. Nelson first diagnosed retinitis pigmentosa in 1949, it is clear from the evidence, including contemporaneous clinical records, that it had become disabling prior to service as the veteran reported progressive visual acuity loss and decreased night vision. Correctable visual acuity decreased during service from 20/30 to 20/40 bilaterally, which is a minimal decrease and must be considered clearly within the natural progress of the preexisting disorder....

R. at 85. The Board again denied service connection for retinitis pigmentosa. R. at 86.

The veteran thereafter submitted additional evidence in an effort to reopen his claim, including records of current treatment for his disability (R. at 88–92, 98–99) and records of his service in the Ohio State National Guard between 1944 and 1946 in which the veteran's vision was noted in four different medical reports as being between 20/20 and 20/35 in both eyes, and was characterized as "normal" or "corrected with glasses" (R. at 109, 111, 113, 115) (the reports do not indicate whether the readings represent corrected or uncorrected vision). The veteran also submitted a copy of a change in a provision of the VA ADJUDICATION PROCEDURES MANUAL, M21–1, stating that retinitis pigmentosa is not considered a congenital or developmental defect. R. at 122, 129, 139. He asserted that the State Guard records and the new M21–1 provision constituted "new and material evidence" to reopen his retinitis pigmentosa claim. The RO denied the claim again in February 1990. R. at 127.

In its May 1991 adverse decision, currently here on appeal, the Board acknowledged the change in the new M21–1 provision (also contained in a precedent opinion of the VA General Counsel, VA O.G.C.Prec. No. 67–90 (July 18, 1990)) but concluded that it did not establish entitlement to service connection, because the Board in 1988 had not denied the claim based on retinitis pigmentosa's being a development condition but rather had concluded that the veteran's retinitis pigmentosa had preexisted service and was not aggravated by service. *D'Amato*, BVA 91–17426, at 4. With regard to the Ohio State National Guard records tending to show that the veteran had normal vision prior to service, the Board concluded that "such records are not of significant probative value on that point in view of the subsequent examination of the veteran for entry onto active duty for his first period of active service, when uncorrected visual acuity was 20/100 in the right eye and 20/200 in the left eye, correctable to 20/30 bilaterally." *Ibid.* The Board further stated:

> The additional evidence submitted by the veteran has no relevance to the question of whether preexisting eye disability was aggravated by service. All evidence pertinent to that particular aspect of the veteran's claim (i.e., the status of the veteran's eyes on induction and on separation from each period of service) was of record at the time of the previous Board decisions and considered and discussed in those decisions.

*Ibid.* The Board concluded in its "FINDINGS OF FACT": "Evidence received subsequent to the October 1988 reconsideration decision of the Board does not, when considered in conjunction with the evidence previously of record, serve to establish that retinitis pigmentosa did not exist prior to the veteran's entry onto active duty or had an increase in its underlying pathology during service." *Id.* at 5.

## II. ANALYSIS

### A. *Readjudication Based on New and Material Evidence*

██ Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that

claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-step analysis. *See Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If the evidence is new and material, the Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *See Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 215 (1991). "New" evidence is evidence which is not "merely cumulative" of other evidence in the record. *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). Evidence is "material" when it is "relevant [to] and probative of the issue at hand" and there is "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin, supra.*

▉ In its May 1991 decision, the Board failed to conduct the first step of this analysis. Rather, the Board proceeded directly to the second step, reviewing the new evidence in the context of all the evidence, and denied the claim. *D'Amato*, BVA 91–17426, at 4–5. The determination whether evidence is "new and material" is a conclusion of law which the Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Jones*, 1 Vet.App. at 213; *Colvin, supra.* Under the circumstances of this case, the Board's failure to apply the first step of the two-step *Manio* analysis is harmless error because the Court holds that the veteran in this case did submit new and material evidence requiring the Board to reopen his claim. *See* 38 U.S.C.A. § 7261(b) (West 1991); *Corry v. Derwinski*, 3 Vet.App. 231, 234 (1992). Specifically, the 1944–1946 Ohio State National Guard records, which tend to show that the veteran's eyesight was relatively normal prior to service, are relevant to and probative of the issue of whether the veteran had an eye disability prior to service and, viewed in the context of all the evidence, they create a reason-

able possibility of changing the outcome of the prior BVA decision. The Board was thus required to reopen the claim and to review the new evidence in the context of the old to determine whether the prior disposition should be altered. *Jones, supra.*

### B. Reasons or Bases

▉ The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C.A. § 7104(d)(1) (West 1991); *Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Masors*, 2 Vet.App. at 188; *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). When making a medical conclusion, the Board must support its conclusion on the basis of independent medical evidence in the record or through adequate quotation from recognized medical treatises; it may not rely upon its own unsubstantiated medical judgment. *See Hatlestad v. Derwinski*, 3 Vet. App. 213, 217 (1992); *Colvin*, 1 Vet.App. at 175.

The appellant asserts in his brief that the Board erred by failing to consider and discuss adequately the statutory and regulatory provisions pertaining to the presumptions of soundness and aggravation. Pursuant to the presumption of sound condition:

> [E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of examination, acceptance, and enrollment, or where *clear and unmistakable evidence* demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

38 U.S.C.A. § 1111 (West 1991) (emphasis added); *see also* 38 C.F.R. § 3.304(b) (1992). When a preexisting condition is properly found (either because it was noted at entry or because it was demonstrated by clear

and unmistakable evidence), the presumption of aggravation provides:

A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a *specific finding* that the increase in disability is due to the natural progress of the disease.

38 U.S.C.A. § 1153 (West 1991) (emphasis added). Furthermore, 38 C.F.R. § 3.306(b) (1992) provides that, as to veterans of wartime service *"[c]lear and unmistakable evidence (obvious or manifest)* is required to rebut the presumption of aggravation". (Emphasis added.)

In the present case, the veteran's retinitis pigmentosa was not noted at entry onto either of his two periods of service. His service records indicate that it was first diagnosed in 1952, during his second period of service. Supp.R. at 2. However, there is also medical evidence that the condition was first diagnosed in 1949, during his first period of service. R. at 124. In either event, the presumption of sound condition would apply and the veteran's retinitis pigmentosa would be considered service connected unless the presumption of soundness was rebutted by clear and unmistakable evidence. In the May 1991 decision currently here on appeal, the BVA concluded that the Board in 1988 had considered all relevant evidence of record and had "found that [it] established that retinitis pigmentosa was, in fact, manifested prior to service." *D'Amato*, BVA 91–17426, at 4.

▮ Neither the 1991 BVA decision here on appeal nor the 1988 BVA decision on which it relied cited the predecessor of section 1111 (section 311) or pointed to any "clear and unmistakable evidence" that retinitis pigmentosa had preexisted either of the veteran's periods of service. Rather, the 1988 BVA decision simply concluded that the evidence "clearly shows that the veteran had *visual problems* prior to service." R. at 85 (emphasis added). Neither Board decision explained how evidence of preservice "visual problems" constitutes

"clear and unmistakable evidence" of preexisting retinitis pigmentosa. Furthermore, because the evidence makes the presumption of sound condition potentially applicable to both of the veteran's periods of service, the Board was required to discuss specifically how that presumption applied and was or was not rebutted with respect to each of those two periods of service. Neither the 1988 nor 1991 Board decision did so.

▮ In this appeal, the Court has jurisdiction to review directly only the 1991 BVA decision, and may not vacate or reverse the 1988 BVA decision even if its reasons or bases were inadequate. Furthermore, the BVA in 1988 was not subject to the reasons or bases requirement now contained in section 7104(d)(1). However, the Court has held that when a claim is reopened, the Board's obligation to provide reasons or bases for its findings and conclusions "is not satisfied by adopting findings [in prior BVA decisions] which are based upon inadequate reasons or bases." *Oppenheimer v. Derwinski*, 1 Vet.App. 370, 371 (1991). Therefore, the Board in this case was required to provide an adequate statement of reasons or bases for any conclusion that the presumption of sound condition was rebutted by clear and unmistakable evidence. In doing so, the Board was not permitted simply to adopt the findings in the 1988 BVA decision, which do not themselves comport with the reasons or bases requirement of section 7104(d)(1).

With respect to the presumption of aggravation, the Board's reasons or bases are also not adequate to explain its conclusion under the applicable statutory and regulatory requirements. In the 1991 decision here on appeal, the Board concluded: "All evidence pertinent to [the issue of aggravation] (i.e. the status of the veteran's eyes on induction and on separation from each period of service) was of record at the time of the previous Board decisions and considered and discussed in those decisions." *D'amato*, BVA 91–17426, at 4. In its 1988 decision, the BVA had concluded: "Correctable visual acuity decreased during service

from 20/30 to 20/40, bilateral, which is a minimal decrease, and must be considered clearly within the natural progress of the preexisting disorder and entirely consistent with the nature of the disorder." R. at 85–86.

■ The 1988 BVA conclusion that the decrease in the veteran's visual acuity during service "must be considered clearly within the natural progress of the preexisting disorder" is an unsubstantiated medical conclusion. As noted above, the Board may not base its decisions on its own unsubstantiated medical conclusions, but must support any medical conclusions through citation to independent medical evidence in the record or adequate quotation of recognized medical treatises. *See Hatlestad, supra; Colvin, supra.* Therefore, the BVA in 1991 was not entitled simply to adopt the findings of the 1988 BVA decision which had not been supported by a statement of reasons or bases consistent with the current requirements of section 7104(d)(1) and this Court's decisions. *See Oppenheimer, supra.* Additionally, neither the 1988 nor 1991 BVA decision explains the applicability of the presumption of aggravation with respect to each individual period of service but, rather, both state as a general conclusion that the veteran's disability was not aggravated by service. Because the presumption of aggravation could potentially apply to either or both periods of service, the Board is required to explain its conclusions with respect to each period of service individually.

Based on the foregoing analysis, remand is required for the Board to readjudicate the claim and to issue a decision fully supported by an adequate statement of reasons or bases. The Board must discuss the applicability of the presumption of sound condition with respect to each period of service. If the BVA concludes that the veteran's retinitis pigmentosa preexisted his first period of service, it must discuss the applicability of the presumption of aggravation with respect to both periods. If it finds that the retinitis pigmentosa preexisted only the second period, then it must discuss the presumption's applicability to the latter period only. In its reasons or bases, the Board must take account of the statutory and regulatory requirements that the presumptions may be rebutted only by "clear and unmistakable evidence", and the Board may rely upon only medical evidence to support any medical conclusions.

## III. CONCLUSION

Upon consideration of the record and the pleadings of the parties, the Court denies the Secretary's motion for summary affirmance, summarily vacates the BVA's May 30, 1991, decision, and remands the matter to the Board for prompt readjudication consistent with this decision. *See Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of that new decision is mailed to the appellant.

VACATED AND REMANDED.